1814.

PARKHURST
v.
VAN CORT-
LANDT.

PARKHURST AND OTHERS *against* VAN CORTLANDT.　　　*October* 30.

A *memorandum*, in writing, of the sale of lands, to be valid within the statute
　of frauds, must not only be signed by the party to be charged, but must con-
　tain the essential terms of the contract, expressed with such clearness and
　certainty, that they may be understood from the writing itself, or some other
　paper to which it refers, without the necessity of resorting to parol proof.
Where an agreement is reduced to writing, all previous negotiations, resting
　in *parol*, are extinguished by the written contract, and cannot be resorted
　to, to help out or explain its meaning.

Vol. I.　　　　　　2 M

1814.

PARKHURST
v.
VAN CORT-
LANDT.

A contract cannot rest partly in writing, and partly in parol; and where a *part performance* is set up to take a case out of the statute, the party is not allowed to resort to parol evidence in aid of the written agreement.

A part performance will not take a parol agreement out of the statute, unless the terms of the agreement distinctly appear, or are made out to the satisfaction of the court.

But where possession has been taken of land, and improvements made, under such imperfect agreement, though the court will not grant relief, on the ground of part performance, yet the bill will be retained for the purpose of affording the party a reasonable *compensation* for beneficial and lasting improvements.

THIS cause came on upon a petition for a rehearing.

The bill stated, that the plaintiffs, on the 7th of *April*, 1797, applied to the defendant, as proprietor of lands in the *Oriskany* patent, who agreed to sell, or lease to them, lot No. 4, in the second allotment of the patent, containing 740 acres; but he being then a tenant in common with the heirs of Mr. *Clark*, and no partition made, gave to the plaintiffs the following *memorandum*, in writing: " Messrs. *John Parkhurst, Frederick Parkhurst,* and *Abel Parkhurst,* have applied to me for leave to possess my lot, No. 4, in the second allotment of the *Oriskany* patent, which contains, by the late *James Cockburn's* survey, 740 acres; I have accordingly given them leave, and promised them, as soon as I can obtain a release from Mr. *Clark's* heirs for said lot, to give them the preference, either to purchase, or take a lease for said lot. *April* 7th, 1797."

That, subsequently to this agreement, for the further satisfaction of the plaintiffs, and to encourage them to make improvements on the land, the defendant further agreed, " that in case of a sale of the land, under the said agreement, the price should be the actual value, at the time of the contract, with interest up to the time of the conveyance, or the value, at the time of conveyance, computed as wild and unimproved land, at the election of the plaintiffs, the sale to be on as liberal credit as the plaintiffs could ask, on payment of interest annually; and in case of a lease of the premises, the same should be durable, or, in other words, a lease in fee, at the

usual and customary rents of the country." That, on making such contract, the plaintiffs entered on the premises, and commenced improvement thereof, and had cleared and brought under cultivation about 100 acres, with an orchard, two dwelling houses, barn, and other buildings, which had cost about 800 dollars. That a partition having been made of the said lands, between the defendant and the heirs of *Clark,* the plaintiffs applied to the defendant to perform his agreement, either by selling or leasing the premises to them. That the defendant suggested some new difficulty among the claimants to the land, which would suspend the execution of the agreement, which, however, he promised to perform as soon as he was enabled to do, and proposed to the occcupants to take short leases, assuring them that, at the expiration thereof, he would perform his contract, by giving a deed or lease; and *G. W. F. Parkhurst,* one of the plaintiffs, accordingly received from the attorney of the defendant, a lease of the premises (except about 90 acres, before leased to *John Colter*) for three years, at the annual rent of 80 dollars : that he was further induced to accept the lease, by a letter from the defendant to his attorney, shown to the plaintiff, stating that the defendant was unable to make a permanent disposition of the lands, as the partition was not then complete; but that he expected that difficulty would soon be removed, when he should determine either to sell or give a permanent lease. That since giving the said lease, the defendant had recognised the original contract, and renewed his promise to fufil it.

The plaintiffs remained in possession of the premises until the 14th of *December,* 1807, about 20 months after the expiration of the lease, when a demand was made of a surrender of the possession, under the penalty of paying double rent ; and the defendant had since brought an action of ejectment to recover possession of the premises.

The bill prayed for a *specific execution* of the contract, and an injunction to stay the suit at law.

1814.

PARKHURST
v.
VAN CORT-
LANDT.

The *answer* of the defendant stated, that the plaintiffs took possession of lot No. 4, in question, in or before the year 1796, without the knowledge or consent of the defendant, or any of the proprietors; that, in *April*, 1797, the plaintiffs applied to him for permission to remain on the lot, and desired to know whether he was willing to sell or lease the lot, and on what terms; and the defendant informed the plaintiffs, that, being only a tenant in common of the lot, he could not sell or lease it; but believing it for the benefit of the owners, that some person should be in possession to prevent waste, he told the plaintiffs they might continue in possession until a partition should be made, when, if he should be inclined to sell or lease, he would give a preference to the plaintiffs; and, at their request, he gave to the plaintiffs the written *memorandum* set forth in their bill; that when he promised the plaintiffs to sell or lease to them in preference, it was not understood by him, nor, he believed, by the plaintiffs, to be a lease in fee, or for any determined period. The defendant denied making the subsequent parol agreement, set forth by the plaintiffs, or any agreement whatever about the sale or lease of the premises, except what was contained in the written memorandum; that since the memorandum was delivered to the plaintiffs, he had never seen or written to them, or either of them, or written any letter relative to the subject, which he intended the plaintiffs, or either of them, should see.

That the plaintiffs, as appeared from a letter from them to the defendant, dated *August* 2, 1796, had entered on the land, and begun to make improvements, before the memorandum was delivered to them; and that he believed they were fully compensated for all their improvements, by the possession of the land, and the issues and profits, during the long period they had occupied it. That since the *memorandum* was given, no application had ever been made to him by the plaintiffs to execute any agreement, nor had he ever recognised, or promised to execute, the agreement, as set forth in

the bill. That a partition was made, but owing to the sickness of other parties, and other causes, the partition was not perfect, when, on the 27th of *February*, 1803, the defendant wrote the letter to his attorney at *Whitestown*, in which he mentions his expectation of getting a release from *Clark*, and that he " shall then determine either to sell or give permanent leases ;" and he instructs his attorney " to inform the occupiers of the land, that it was the defendant's desire that they should take a lease for three years, under a moderate rent, and pay in the taxes, and covenant to surrender the same to the defendant at the expiration of the said term ;" and that he enclosed a description of the lots, " and a list of those applicants to whom he gave permission to go on, many years ago, to hold the same during his pleasure, without any further consideration than to prevent waste," &c.

The answer further stated, that the defendant did not write the letter with the intention that it should be shown to the plaintiffs. That all the occupants, except the plaintiffs, and four others, combined not to accept leases, unless they were paid for their improvements, or had an agreement to sell to them at a reasonable price. The lease was accepted by the plaintiffs without any assurance from, or authorized by, the defendant, as to any agreement or contract, other than that stated in the memorandum ; nor had the defendant acknowledged any other contract. That proceedings were instituted to remove the plaintiffs from possession, as stated in the bill, but no application had been made by the plaintiffs to the defendant, on the subject. That of the 740 acres of land mentioned in the memorandum, the defendant owned 291 acres in his own right, and 250 acres as executor, and no more : and the defendant pleaded and relied on the statute of frauds, by which the agreement set up by the plaintiffs, even if it had been admitted, would be void.

The bill was, afterwards, amended, so as to confine the plaintiff's claim to relief, to the lands actually owned by the defendant:

*G. W. F. Parkhurst,* in his letter to the defendant, dated *April* 3, 1806, said, that, " In regard to those lands he had in possession that belong to the defendant, he and his brothers would wish to have the whole he had taken a lease of. If he could have a durable lease, he should be willing to give a large rent; but if not agreeable to the defendant to lease, he should be glad to have the preference of having it on the best terms which the defendant can give. That he and his father had laid out a good deal of property in clearing and building on the defendant's land, and his parents were old, and if they should be obliged to leave it, it would be hard for them; *but we lie at your mercy to do with us as you think most proper.* If the defendant was inclined to sell rather than lease, he would be glad to purchase, and make the best payments he could," &c.

*Benjamin Lawrence,* a witness for the plaintiffs, stated, that, on the 8th of *July,* 1793, the defendant gave him a written " contract," to occupy and improve lot No. 4, which stated that he was to hold the land *during the pleasure* of the defendant, and was to have the preference, either to purchase or take a lease when the defendant was legally entitled to sell or lease. That, in *October,* 1793, the witness assigned this contract to *G. W. F. Parkhurst,* for the benefit of the *Parkhurst* family. The plaintiffs entered in *April,* 1794, and, in *December* following, the witness informed the defendant of the assignment to them, and the defendant said he would give a good title to the lot, as soon as he could obtain a release from the heirs of *Clark,* either by a durable lease on good terms, or by selling, as plaintiffs chose; that he only wanted his *interest* annually; that the plaintiffs might go on, and occupy, and improve, as if the lot was their own, and no advantage should be taken of their labour, &c. The witness was present when the plaintiffs gave up the contract which had been assigned to them, and took the memorandum of the 7th of *April,* 1797; and the defendant then said he would sell or lease, as soon as he obtained a release, &c. The wit-

ness did not think that the rents and profits would more than compensate for the improvements. *Simeon Parkhurst,* and *Richard H. Harrison,* confirmed the statement of *Lawrence;* several other witnesses were examined as to the value of the improvements, and of annual profits, &c.

*Gold,* for the plaintiffs.

*Harison* and *P. A. Jay,* contra.

THE CHANCELLOR. This is a suit for a specific performance of a contract to sell land.

The defendant, in his answer, denies any such agreement as is charged in the bill, and likewise insists upon the statute of frauds, as a defence against any parol agreement which might be made out.

The plaintiffs rely partly upon a parol agreement, and partly upon an agreement in writing, which is admitted to have been signed by the defendant. It is an agreement, or *memorandum,* dated the 7th of *April,* 1797, in which the defendant states, that the plaintiffs had applied to him for leave to *possess* lot No. 4. in the second allotment of the *Oriskany* patent, and that he had, accordingly, given them leave, and promised them, as soon as he could obtain a release from the heirs of *Clark,* of their interest in the lot, he would give the plaintiffs the preference, either to purchase or to take a lease for the lot.

1. The first question that properly arises in this case is, whether this *memorandum* contains, within itself, sufficient evidence of a valid agreement to take the case out of the statute, and to justify a decree for a specific performance.

The *memorandum* appears to be utterly defective. It ought to have stated the terms of the contract with reasonable certainty, so that the substance of it could be made to appear, and be understood from the writing itself, without having recourse to parol proof. This is the meaning of the

statute, and without such the beneficial ends of it would be entirely defeated.

If the *memorandum* is to be understood as promising to sell or lease to the plaintiffs at their election, yet the terms of such sale, or leasing, are omitted, and it is altogether uncertain to what extent, on what condition, or for what price, the parties meant to contract. Unless the essential terms of the bargain and sale can be ascertained from the writing itself, or by a reference contained in it, to something else, the writing is not a compliance with the statute. The cases to this point are decisive. In *Blagden* v. *Bradbear*, (12 *Ves.* 466.,) there was a bill for specific performance of an agreement for the purchase of land, and the *Master of the Rolls* observed, that an auctioneer's receipt may be a note or *memorandum* within the act; but then the receipt must contain, in itself, or, by reference to something else, must show what the agreement was; that one material particular did not appear in the receipt, viz. the price; and the defendant, by insisting on the statute, had thrown it on the plaintiffs to show a complete written agreement, and the bill was dismissed. The omission to mention the price in a letter, acknowledging the contract to sell, was held by Lord *Hardwicke*, in *Clerk* v. *Wright*, (1 *Atk.* 12.,) to be a fatal omission, rendering the written evidence of the contract too defective to take it out of the statute. So, in *Clinton* v. *Cook*, (1 *Schoales & Lefroy*, 22.,) the bill was for specific performance of an agreement for a lease for three lives, and the written *memorandum* of the defendant omitted to mention the terms, or any term or time of duration of the lease, though it was made in consequence of an advertisement of the defendant, offering to lease the land for three lives. Lord *Redesdale* held, that the defendant was not bound to perform the contract, there being no evidence in writing of the terms to be devised, and there being no reference in the agreement to the advertisement. Again, in *Seagood* v. *Meale & Leonard*, (*Prec. in Ch.* 560.,) on a like bill, the

*1814.*

PARKHURST
v.
VAN CORT-
LANDT.

agreement in writing did not specify *the terms* of the purchase. It did not mention the sum, nor the way of disposal, nor to whom; and all the danger of perjury would have been let in, to ascertain the agreement; the bill was consequently dismissed. The same doctrine is contained in many other cases, as well at law as in equity; (*Boydell* v. *Drummond*, 11 *East*, 142. *Tawney* v. *Crowther*, 3 *Bro*. 318. *Bailey & Bogert* v. *Ogden*, 3 *Johns. Rep*. 419. *Symondson* v. *Tweed*, *Prec. in Ch*. 374. *Gilb. Eq. Cas*. 35. *Bromley* v. *Jefferies*, 2 *Vern*. 415. *Underwood* v. *Hithcox*, 1 *Ves*. 279.;) and I am warranted in considering it as a settled principle, that, if the court cannot ascertain, with reasonable certainty, the terms of the agreement, from the writing, or from some other paper to which it refers, the writing does not take the case out of the statute.

It appears to be equally well settled, that, when the agreement is thus defective, it cannot be supplied by parol proof, for that would be at once to open the door to perjury, and to introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent. The observations of the court, in the cases of *Clinan* v. *Cook*, and of *Boydell* v. *Drummond*, already cited or referred to, and the strong opinion of Mr. J. *Buller*, who presided for the Lord Chancellor, in *Brodie* v. *St. Paul*, (1 *Vesey*, jun. 326.,) are very conclusive upon this point, as far as authority might be wanting, in support of a principle so very clear and expedient, and which appears to have been uniformly admitted by the courts. (*Binstead* v. *Coleman*, *Bunb*. 65. Lord *H.*, in 2 *Atk*. 383.)

I consider, then, that the agreement of *April*, 1797, is too uncertain and too defective, as to the essential terms of the purchase, to authorize a decree for a specific peformance. The court cannot, and ought not, to make bargains for parties, or to determine, in the case of a purchase, what one party ought to give and the other to take; and, in the case of a lease, whether it ought to be for years, or for life or lives,

*Margin:* 1814. PARKHURST v. VAN CORTLANDT.

1814.

PARKHURST
v.
VAN CORT-
LANDT.

or in fee, and the amount of the rent, and whether payable in money or in produce, and in what periods. All this I must determine, if I undertake to carry this agreement into effect. It is not necessary, here, to insist on another material defect in the agreement, and that is, the want of mutuality; for if the defendant were bound to sell or lease, at the election of the plaintiffs, the plaintiffs were not bound to elect or to take either. It would be difficult to deduce any such obligation from the *memorandum*; and it seems to be very generally, and very properly, laid down in the books,. that a court of equity will never decree performance where the remedy is not mutual, or one party only is bound by the agreement. (*Armiger* v. *Clarke*, *Bunb*. 111. *Troughton* v. *Troughton*, 1 *Ves*. 86. *Lawrenson* v. *Butler*, 1 *Schoale & Lefroy*, 13. *Bromley* v. *Jefferies*, 2 *Vern*. 415.)

The plaintiffs have gone into parol proof of negotiations and conversations prior to, and at the time of, the date of the agreement, to remove the ambiguity on the face of it, as to the meaning of the *preference* which was to be given, and also to ascertain, with some convenient certainty, the sense of the parties as to the terms of the purchase or lease. But I apprehend the rule to be too reasonable, and too well settled, to be now disturbed, that when an agreement is reduced to writing, all previous negotiations are resolved into the writing, as being the best evidence of the certainty of the agreement. Every thing before resting in parol, becomes thereby extinguished or discharged. (*Pasch*. 22 *Car*. I. *K. B.* cited in 5 *Viner*, 515. pl. 18. *Christmass* v. *Christmass*, *Trin*. 11 *G*. I. *in Ch*. cited in 5 *Viner*, 517 pl. 26. *Vandervoort* v. *Col. Ins. Com*. 2 *Caines*, 155. *Mumford* v. *M‘Pherson*, 1 *Johns. Rep*. 414.) It has been already observed, that parol proof cannot be resorted to, to supply what may be uncertain and defective in the writing; The note or *memorandum*, of *April*, 1797, is then to be laid out of the case, as being no compliance with the statute, and as forming, of itself, no ground for a specific performance.

2. But the plaintiffs set up part performance to take the case out of the statute, and allege that this part performance consisted in delivery of possession, and in the beneficial improvements which the defendant encouraged the plaintiffs to make.

In the first place, it is very questionable whether the plaintiffs are to be permitted, even in the case of part performance, to resort to parol proof, in explanation of, or as a substitute for, an existing written agreement. It would be against the principle which has just been stated. A contract cannot rest partly in writing, and partly in parol. The writing is the highest evidence of the agreement, and does away the necessity and the effect of parol evidence. To this purpose it was observed by Lord *Thurlow*, in *Irnham* v. *Child*, (1 *Bro.* 92.,) that the rule was perfectly clear, that, where there was a deed in writing, it will admit of no contract that is not part of the deed ; and that, whether it adds to, or deducts from the deed, it is impossible to introduce it on parol evidence. The point appeared to Lord *Redesdale* so repugnant to general principles, that he declared, in *Clinan* v. *Cook*, that, if there were part performance, he should have had great difficulty in letting in parol proof in aid of a written agreement.

But if the parol proof is to be let in, the same difficulty occurs that arose upon the *memorandum*, as to the uncertainty of the essential terms of the contract. There is no evidence of any price agreed on in case of a sale, or of any certain term, or rent, if a lease was to be preferred. And, if the court cannot execute the agreement even when in writing, if the terms of it be uncertain, the same reason and the same authorities apply, when the agreement, resting on parol evidence, is likewise uncertain. It is impossible to decree a specific performance in this case, whether we take the agreement from the writing, or from the parol proof, or from a combined view of both, without determining for the parties, if the plaintiffs elect to buy, the price, the credit, and the

1814.

PARKHURST
v.
VAN CORT-
LANDT.

times of payment; and, if the plaintiffs elect to lease, the duration of the lease, the amount of rent, and when, where, and in what, payable. This would be going further than any of the cases will warrant. It would be taking from the parties their inherent and valuable right to make their own bargains, and we should appear to have forgotten the ex-press words of the statute, that no *contract or sale of lands, or any interest therein, shall be valid, unless the agreement, or some note or memorandum thereof, be in writing, and signed by the party to be charged.*

The general language of the books is, that part perform-ance will not take a parol agreement out of the statute, unless the terms of the agreement distinctly appear, or are made out to the satisfaction of the court. (*Amb.* 586. 1 *Ves.* 221. 2 *Schoale & Lefroy* 1. & 459. 3 *Atk.* 503. 6 *Ves.* 470—1., and the cases already cited.) I had occasion lately to consider this very point in the case of *Philips* v. *Thomp-*

* *Ante* p. 131. *son and others ;** and it is, undoubtedly, the sound doctrine, though there may be, sometimes, a case or. *dictum* which seems to impair it. The ground of the relief in chancery, is the fraud in permitting a parol agreement to be partly executed, and in leading on a party to expend money in the melioration of the estate, and then to withdraw from the performance of the contract. (1 *Ves.* 221. 1 *Bro.* 417. 6 *Ves.* 27.) The courts of equity, in their anxiety to guard the party from the effects of fraud, have been led to some fluctuating decisions on this point of part performance; but the current of cases, both ancient and modern, is pretty uniform and consistent with the principle I have stated, and the tendency of the latter cases is to prefer giving the party *compensation in damages,* instead of a specific performance. Wherever damages will answer the purpose of indemnity, this alternative is to be preferred, as it will equally satisfy justice, and will be in coincidence with the provisions, and in support of the authority, of the statute. It was the obser-vation of the Master of the Rolls, afterwards Lord *Alvanley,*

in the case of *Froster* v. *Hale*, (3 *Ves.* 713.,) that " the court had gone rather too far in permitting part performance, and other circumstances, to take a case out of the statute, Part performance may be evidence of some agreement, but of what, must be left to parol proof. The court ought not to have held it evidence of an unknown agreement, but to have had the money laid out, repaid. It ought to have been a compensation. It was very right to say the statute should not be an engine of fraud; therefore, compensation would have been very proper."

1814.

PARKHURST
v.
VAN CORT-
LANDT.

Other judges have felt and expressed the same sense of the inconvenient extent to which this doctrine of part performance has been carried. Under pretence of part execution, as Lord *Redesdale* observed, in *Lindsay* v. *Lynch*, (2 *Schoale & Lefroy*, 1.,) if possession is had in any way whatever, means are frequently found to oblige a court of equity to break through the statute of frauds; and he said it was a common expression at the *Irish* bar, that it had become a practice *to improve gentlemen out of their estates.* This same distinguished Chancellor was led to remark, in another case, *Harnett* v. *Yielding*, (2 *Schoale & Lefroy*, 549.,) that decrees for specific performance had been carried to an extent which tended to injustice. The original foundation of these decrees was, that damages at law were not an adequate compensation; and, if damages at law be commensurate with the injury, the court will not interfere. This was the doctrine as early as 1683, soon after the passing of the statute of frauds, in the cases of *Dean* v. *Izard*, and *Hollis* v. *Edwards*, (1 *Vern.* 159.) Those were bills for the execution of a parol agreement for a lease, and in confidence of which, the plaintiff had expended large sums on the premises. The statute of frauds was pleaded, and the *Lord Keeper* said, that the plaintiff, in each case, had a clear equity to be restored to the money expended for improvements, and he thought the bill would hold *so far*, as to be restored to the expenditures, and he directed an issue at law, to ascertain the damages.

The uncertainty of the terms of the agreement is, then, of itself, an insuperable objection to the specific execution sought by the bill; and the compensation for improvements, which can be awarded under the authority of the court, affords to the party an adequate and a more suitable relief. Not only the case last cited, but the reasons and authorities contained in the recent decision, in *Phillips* v. *Thompson and others*, show that the court possesses ample jurisdiction over this question of compensation, and that, though other relief cannot be granted, the bill may be sustained for that purpose.

I have hitherto considered the case in the most favourable light for the plaintiffs, in respect to the evidence of a parol agreement; but there are written documents which tend strongly to overturn or destroy the weight of the parol proof, as to the existence of any agreement on the part of the defendant to sell, or permanently lease, the premises. I refer to the lease for three years, which the plaintiffs accepted, as late as the 1st *April*, 1803, and to the letter of *G. W. F. Parkhurst*, the principal plaintiff, of the date of 3d *April*, 1806, in which he offers to lease or purchase the land, on such terms as the defendant can afford, and admits the right to sell or lease, and the terms of either, to rest wholly in the discretion of the defendant. It is difficult to resist the impression which these documents are calculated to produce; and the letter of the 27th *February*, 1803, from the defendant to Mr. *Platt*, as mentioned in the pleadings, does not weaken that impression. That letter had no particular allusion to the parties in question, but to the *Oriskany* lots in general: and it is evidence, as far as it goes, that the defendant intended to reserve to himself the right to determine, whether to sell or lease, and upon what terms.

The most that can be said in favour of the plaintiffs' case is, that as the defendant, by his *memorandum*, in 1797, encouraged the plaintiffs to possess and improve the lot, under some vague assurance that he would, eventually, lease or sell to them, he ought not now to avail himself of the bene-

fit of their improvements, without making them compensa-
tion.

The uncultivated state of most part of the land, when
the defendant first gave sanction to the possession of the
plaintiffs, and the uncertainty, at least, of any redress at law
for their improvements, are additional considerations for re-
taining the bill; and in this view, perfect justice can be done
to both parties, consistent with the principles of equity and
law.

I shall accordingly correct the decree heretofore pro-
nounced in this case, and shall direct a reference to a master,
to take and state an account between the parties; and that,
in taking the same, he charge the plaintiffs with the rent, if
any, in arrear, and with what shall appear to be a reasonable
rent for the time the same was not agreed on by the parties;
and that he make to the plaintiffs a reasonable allowance for
beneficial and lasting improvements made by them upon the
land; (a) and that he take the necessary proofs for that pur-
pose, and report with convenient speed; and that all other
questions be, in the mean time, reserved.

" It is ordered, that the former order made in this cause,
on the 20th of *December* last, and the other orders and de-
cree made in the cause, subsequent to the day last aforesaid,
and previous to the order for rehearing, be set aside. And
it is further ordered, that it be referred to *Walter King*,
Esq., one of the masters of this court, residing in *Oneida*
county, to take and state an account between the parties;
and that, in taking the same, he be directed to charge the
plaintiffs with the rent, if any, in arrear, and for such
time as the rent was not agreed on by the parties, that he
charge the plaintiffs with what shall appear to be a reasona-
ble rent; and that he be directed to make the plaintiffs a
reasonable allowance for beneficial and lasting improvements

(a) See a similar order. 2 *Schoole* & *Lefroy.* 513.

1814.       made by them upon the premises; and that, in taking such
~~~~~       account, the depositions and exhibits in the cause may be
FROST       used by the parties; and that they be at liberty to produce
v.          other proof, which the master, in that case, is to return with
BEEKMAN.    his report.   And all further questions to be reserved, until
            the coming in of the report."