ROTH (DARST v.). See Case No. 3,582.

ROTHWELL (HAYMAN'S ADM'RS v.). See Case No. 6,267.

ROUDENBUSH (UNITED STATES v.). See Case No. 16,198.

ROULSTONE (CURRY v.). See Case No. 3,-497.

---

## Case No. 12,084a.
### ROUNDTREE v. McLAIN.
[4 Hempst. 245.] [1]
Superior Court, Territory of Arkansas. July, 1834.

SPECIFIC PERFORMANCE—EQUITY—ADEQUATE REMEDY AT LAW—CREDITORS.

1. Equity will not enforce the performance of a contract which is uncertain, unfair, or unreasonable, nor where adequate compensation can be had at law.

2. Nor will equity compel the specific performance of a contract respecting a chattel, unless in peculiar cases, where there is no adequate remedy at law.

3. Equity will never aid one creditor to obtain an undue advantage over another.

4. R., being indebted to M., in consideration of forbearance, agreed to procure the obligation of a third person, and assign it to M., or so much as would satisfy the debt; held, that a specific performance would not be enforced.

Appeal from Pulaski county court.

[This was a bill by John McLain against Tennessee Roundtree, administratrix of Jesse Roundtree.]

---

[1] [Reported by Samuel H. Hempstead, Esq.]

Before JOHNSON and LACY, JJ.

LACY, J. This is an appeal from the Pulaski circuit court. The bill was filed by McLain, the appellee, for the specific performance of a parol agreement in the case of a chattel. It charges that Jesse Roundtree, in his lifetime, was considerably indebted by note and account to the complainant, and in consideration of his forbearance to sue, and give day, Roundtree, on his part, stipulated to procure an obligation of Allen Martin, as soon as he completed the building of a cotton-gin for Martin, and to assign the same to the complainant, or so much thereof as would satisfy and discharge his, Roundtree's, debt to McLain. It was further stated, as agreed between the parties, if Martin's note exceeded the amount due McLain, he was to pay the difference or excess to Roundtree. The answer denies the allegations of the bill, and puts the complainant to the proof.

It has been so repeatedly and constantly ruled, that equity will not enforce the specific performance of a contract where either the contract or the proof is uncertain, that reference to the decisions is deemed almost unnecessary and superfluous. Colson v. Thompson, 2 Wheat. [15 U. S.] 336; 1 Fonbl. Eq. 172; 4 Johns. Ch. 559; 11 Ves. 522. The agreement is substantially proved by one witness, and very imperfectly by any other testimony. Under all the circumstances of the case, it is questionable whether the proof would be sufficient to sustain the bill; but waiving that objection, and considering the agreement as fully established, the court will proceed to examine what equity the complainant has to ask for the extraordinary interposition of the chancellor. The jurisdiction to decree the specific performance of the agreement of parties, is founded on a legal title to damage, and will not be enforced, where adequate compensation can be recovered by an action at law. Flint v. Brandon, 8 Ves. 159; Halsey v. Grant, 13 Ves. 73; [Mechanics' Bank of Alexander v. Seton] 1 Pet. [26 U. S.] 305; Holly v. Edwards, Burrows, 159; Parkhurst v. Van Cortlandt, 1 Johns. Ch. 282; 1 Bibb, 212; 2 Bibb, 273. If McLain has actually sustained an injury, his redress is ample, by an action on the case for damages. It is no answer to say that Roundtree's estate is insolvent. The question is not, whether it is insolvent or solvent; but has the party as full and complete a remedy at law as in equity? If so, he cannot come into this court for relief. What legal or equitable right has McLain to the note, or obligation which Roundtree promised to procure from Martin, and in what way or by what means can he set up his claim? At the time the agreement was entered into, it had no legal existence, for nothing certain was then due Roundtree from Martin, and his indebtedness, which afterwards accrued, depended upon a contingency which might never happen. Could McLain, by bill, or otherwise, have prevented Martin from discharging his own note, after its execution, or Roundtree from assigning it to an innocent purchaser for a valuable consideration? Surely not. If he had exhibited his bill in the lifetime of the intestate, could a court of chancery have decreed the specific performance of the agreement, when it possessed no means by which Martin could be compelled to give the note, or Roundtree to assign it? What sort of legal right had the complainant to the note, which could be enforced? None at all. He does not claim it by delivery, for it never was in his custody or possession; nor by assignment, for this bill is to effect that object. It is contended, however, that this agreement constitutes an equitable charge upon a particular fund in the hands of Martin, and that equity will consider that done which ought to be done, and consequently enforce the agreement. This doctrine is unquestionably true, when a proper case arrives for its application; but the present case is not embraced by this principle, nor does it fall within the reason of the rule. It is, however, but justice to add, that the position was maintained with much learning and skill, and in a manner highly creditable to the ability of the counsel. The case of Row v. Dawson, 1 Ves. Sr. 331, was cited and relied on by the counsel for the complainant; but that case and this are widely different, and the principle there settled by Lord Chancellor Hardwicke, so far from sustaining this bill, shows that it should be dismissed for want of equity. There, money was advanced on a draft drawn by the borrower, on certain moneys then due and to become due to him at Michaelmas, and the draft was also placed in the hands of the proper officer of the exchequer, which the court declared amounted to an assignment, and that the officer could not have paid the money to the drawer without making himself liable, because he had actual notice of the assignment for a valuable consideration. It could not be contended, that Martin could not have discharged his note to Roundtree, without making himself liable to McLain. Besides, in that case there was both assignment and delivery of the draft, and a prior lien for the money advanced, which immediately attached. Here none of these requisites existed, which cannot indeed be dispensed with; there was neither assignment nor delivery, nor was any thing due or certain, at the time of the contract, nor does the bill allege that advancements were made on the faith of the agreement, or of any particular fund.

An application to a court of chancery for the specific performance of a contract, is always addressed to their sound discretion. 1 Ves. Jr. 565. Lord Somers, in the celebrated case of Marquess of Normandy v. Lord Berkly, 5 Vin. Abr. 539, said that a specific performance ought never to be decreed,

though the contract might be good in law, and damages recoverable for its breach, unless it was fair and reasonable in every particular. If an executory agreement is hard or oppressive, it is the constant practice to refuse a specific performance. Barnardiston v. Lingood, 2 Atk. 133; Howell v. George, 1 Madd. 5–7; 2 Schoales & L. 554; Cas. temp. Talb. 234. This bill is to compel the specific performance of a contract respecting a chattel, which is never decreed, except in cases of extreme and peculiar hardship, and when there is no adequate remedy at law. Mason v. Armitage, 13 Ves. 37; 1 P. Wms. 570; 3 Atk. 383; Hardin, 553; 3 Atk. 389; 2 Ves. Sr. 238. And to grant relief would violate the rule that a court of equity will never allow one creditor to gain an inequitable or undue advantage or preference over others. Riggs v. Murray, 2 Johns. Ch. 576; St. John v. Benedict, 6 Johns. Ch. 112. This contract is certainly executory, and if enforced, it would prefer one creditor to another, without any lien, assignment, or legal right in his favor. It is neither fair, reasonable, nor just, for one to appropriate all the estate to his own benefit, without any advancement made in favor of the debtor, on the faith of the particular or expected fund. The bill does not allege, that at the time the contract was made, Roundtree was solvent and afterwards became insolvent, whereby the complainant lost his debt. This contract is deemed hard and oppressive, on the part of Roundtree, for it could easily have been, and probably was, extorted from his fears and necessities. If agreements of this kind should be specifically enforced, then great injustice and oppression might be exercised by creditors adjusting and settling their claims with their debtors, which ought not to be allowed.

The decree of the circuit court, in favor of McLain, must be reversed, and the bill dismissed for want of equity, at his cost. Decreed accordingly.