## RICHARD McMURTRIE and another *vs.* JOHN BEN-NETTE and others.

Third Circuit.

McMurtrie *vs.* Bennette.

Courts of equity do not, as a matter of course, decree specific performance of contracts, but exercise a discretionary power, upon a view of all the facts of the case ; and this discretion must not be arbitrary and capricious, but regulated on grounds that will render it judicial.

The contract or agreement sought to be enforced, must be mutual, and the tie reciprocal, or a court of equity, will not enforce a performance.

The contract, in order to be enforced, must be certain in all its essential particulars.

If a party sets up part performance, to take a case out of the statute of frauds, he must show acts unequivocally referring to, and resulting from that agreement, such as the party would not have done unless on account of that very agreement, and with a direct view to its performance; and the agreement set up must appear to be the same with the one partly performed—there must be no uncertainty or equivocation in the case.

The ground of the interference of courts of equity to enforce specific performance, is not simply that there is proof of the existence of a parol agreement, but that there is *fraud* in resisting the completion of an agreement partly performed.

It seems now to be held, that the payment of the *whole* of the purchase money, clearly in pursuance of a definite and mutual parol agreement is sufficient to take the case out of the statute ; but it has uniformly been held that the payment of a trifling amount of the consideration, is in no case of itself sufficient.

The bill in this case was filed to compel the specific performance of a parol agreement to convey land.

The bill states that John Bennette, one of the defendants, in a conversation had with complainants, in the month of May or June, in the year 1834, verbally agreed to sell and convey to the complainants a certain lot of land, containing eighty acres, for the sum of one hundred and fifty dollars, a part to be paid in money, and the remainder in a certain order drawn upon a man in the state of New York; that complainants paid Bennette, at the time, four dollars; that a deed was soon to be made for the premises; that instead of reducing the agreement to writing, Bennette gave the complainants the duplicate receipt for the land, which he had received at the time he purchased the land of the government, saying, at the same time, that that receipt was as good as an article, for he, Bennette, could not sell the land without it; that Bennette put complainant in possession, and he had made improvements, &c., that

afterwards Bennette made a deed to complainants of the premises, but did not deliver it; that about a week afterwards, Bennette sold and conveyed the land to defendant, Jameson, through his, Jameson's, agent, Powell Grover, one of the defendants; that Grover knew of the previous sale by Bennette, to complainants, when he purchased for Jameson; the complainants offered to perform the contract on their part, and demanded a deed.

The bill further stated that Jameson had deeded the premises to Grover, and prayed a decree for specific performances, and also contained a prayer for other relief, &c.

The answer of Grover admits the bargain between Bennette and complainants, but denies that the four dollars was paid towards the land; states that the four dollars was borrowed by Bennette, and that he had offered to repay it; admits that Jameson offered to purchase the land of Bennette, in June, 1834, in his presence, and that Bennette told him that he had made a contract or bargain for the lands with complainants; admits his being Jameson's agent, to purchase the land, in case the same should not be conveyed to complainants; states that Bennette called on Grover, June 24, 1834, and stated, that complainants had not complied with their contract to purchase the land, and that Bennette then offered to sell the land, and that he, Grover, purchased it for Jameson; that he inquired of complainants respecting their agreement to purchase, and their answer satisfied him that they had abandoned the contract; admits the deed to Jameson, and its record, and also the improvements by complainants; admits that he purchased from Jameson, March 4, 1836, for $500; denies any knowledge of complainants' having any equitable title at the time he purchased from Jameson, and claims the benefit of the statute of frauds.

The cause was heard on bill, answer and testimony.

J. W. Jewett, solicitor for complainants.

J. H. Preston, for defendants;

*Third Circuit.*

*McMurtrie vs. Bennette.*

THE CHANCELLOR. It is not a matter of course to decree specific performance of contracts. It requires a sound discretion, upon a view of all the circumstances, and this discretion must not be arbitrary and capricious, but must be regulated upon grounds that will make it judicial. *Seymour* vs. *Delancy*, 6 *Johns. Ch. Rep.*, 222; *same case, on appeal*, 3 *Cowen*, 505.

The contract or agreement sought to be enforced, must be mutual, and the tie reciprocal, or a court·of equity will not enforce a performance. 1 *Mad. Ch.*, 423; 1 *Johns. Ch.*, 282, 378. Here the contract rests entirely in parol. The letter given in evidence, is too uncertain to form the foundation of any proceeding; it specifies no land, nor any price, and nothing can be drawn from it, as referring to the land in question.

The contract, in order to be enforced, must be certain in all its essential particulars. There is none of that certainty shown in the contract or agreement here sought to be enforced, which is necessary to enable this court to decree a specific performance.

If a party sets up part performance, to take a parol agreement out of the statute, he must show acts unequivocally referring to, and resulting from *that* agreement; such as the party would not have done, unless on account of that very agreement, and with a direct view to its performance; and the agreement set up must appear to be the *same* with the one partly performed. There must be no equivocation or uncertainty in the case.

The ground of the interference of this court is not simply that] there is proof of the existence of a parol agreement but that there is *fraud* in resisting the completion of an agreement partly performed. *Phillips* vs. *Thompson*, 1 *Johns. C. R.* 131.

If this case can be sustained at all, it must be on the ground of part performance, for there is clearly no such written contract or agreement as can be enforced by this court.

The question then recurs, was there such a specific, definite **verbal contract as can be enforced, and has there been such a**

part performance, and readiness to fulfil, on the part of the complainants, as will take this case out of the operation of the statute of frauds, and render it the duty of this Court to decree a specific performance? It seems to me not. The improvement I regard as out of the question, so far as that may be sought to make a part of the performance and fulfilment. It is pretty clear, that whatever was done in this way, was not done until after the conveyance to Jameson, and it was only done with a view to its effect upon these proceedings. *From* the testimony of Green and Sewel, confirmed by the other witnesses, it is to be inferred that there was a parol contract for the sale of the land in question; but this, it is equally apparent, must have been conditional; that is, that the defendant, Bennette, would convey the land upon condition that the complainants would pay to him the purchase price. There was no such mutual undertaking on the part of the complainants, as *would have* enabled Bennette to compel them to pay the money at any definite time. But it must be inferred that the agreement was to convey the land upon the return of Bennette from Jackson, if they would then pay him the consideration.

Th re is some discrepancy as to the intention of the payment of the four dollars. But, I am inclined to think, that both parties intended at the time, that this should apply in part payment.

It has been held, that even full payment of the purchase money, is not sufficient, of itself, to take a case out of the statute. 1 *Maddocks' Ch.*, 381; *and note* (e).

But I am inclined to think the better opinion now is, that the payment of the whole of the purchase money, clearly in pursuance of a definite and mutual parol agreement, is sufficient to take a case out of the statute. But, I believe it has uniformly been held, that the payment of a trifling amount, as was the case here, is not, of itself, sufficient. Indeed, if this were permitted in a case like the present, it would defeat all the beneficial objects of the statute. But this application of the four dollars must, in the nature of things, have been con-

Third Circuit.

McMurtrie
vs.
Bennette.

tingent; that is, upon condition that the complainants, entitled themselves to a conveyance of the land, by performing, on their part, by the payment of the balance of the purchase money.

The ground on which the Court acts at all, in these cases, is *fraud*, in refusing to perform *after* performance by the *other* party. The allowing any other construction upon the statute of frauds, would be to make it a guard and protection to fraud. 1 *Maddocks' Ch.*, 378. This is the rule laid down in the books, and it is the true one. Let us apply it to the case before us. Here is not only an absence of all appearance of fraud, but of all temptation to commit it. It appears that Bennette had waited for the performance of complainants, away from home for a considerable time; that he had done all on his part; that he was ready to make the complainants a title; that, on the day on which a conveyance was made to Jameson, he applied to one of the complainants, and then stated, that he had waited four weeks for them; but that, if they would then fulfil the contract, he would not convey to Jameson; and he finally sold the land for five dollars less than, according to the bill, he was to have received of complainants.

It is true that the complainant, Henry, replied that he was ready to fulfill on his part, but he offered no payment nor made any definite suggestion as to any payment. This was merely keeping the word of promise to the ear, and after so long a delay, might have justly been treated by the defendant Bennett, as such a failure to fulfill, on the part of complainants, as would absolve him. In the absence of all fraud and all temptation to commit fraud, I can see no other way of treating this matter. What other course was left? It would have been, hard, indeed, to hold him longer in this state of uncertainty; it would be more severe, after the lands have been conveyed to a bona fide purchaser, and expensive improvements made by others, still to decree a specific performance.

I do not perceive any ground to impute fraud or unfairness to the defendant Grover, in this transaction. He swears positively it was purchased for Jameson and with his money;

that he left the agency with him because he could not remain so long from home. It appears, too, that Jameson owned adjoining lands. Grover manifested no great anxiety to purchase, but it was placed on the ground that he would take it for Jameson if the McMurtries failed to pay. It is true Grover subsequently purchased this and the adjoining tract of land, but at an advanced price. Judges, of late, have regretted that the cases have gone so far in permitting part performance to take a case out of the statute, and have said that the courts ought to make a stand against further encroachments upon the statute of frauds. In these views I concur. Unless a stand is made, all the salutary objects of the statute will be lost sight of. Some other points were made in the argument, which are not necessarily involved, and perhaps I have already gone farther than is necessary; as, after all, the case turns principally, on the entire absence of fraud on the part of the defendants, and the non-fulfillment on the part of the complainants; there is such a want of certainty and mutuality in this contract that it cannot be enforced. The complainants have failed to fulfill on their part. Decreeing a specific performance is an exercise of the powers of this court not *ex debito justiciæ*, but to be exercised upon a full view of the whole case. There being an entire absence of fraud, and, so far as can be ascertained from the case, the failure of the contract having been caused by the non-fulfillment of the complainants themselves, they have not made such a case as calls upon this court to interfere and decree a specific performance, but that the parties should be left to their remedy at law. The bill must be dismissed with costs.

Bill dismissed.