## HAGEDORN v. LANG.

(Supreme Court, Appellate Division, Second Department.   November 22, 1898.)

AUCTION SALE—STATUTE OF FRAUDS.
  Just before a sale of real estate at auction, the vendor and the auction-
  eer signed the terms of sale, and attached thereto a poster, which had
  been circulated, and which contained a diagram of the property.   At the
  sale these terms were read to the assembled buyers, and when defend-
  ant's bid was accepted the auctioneer, in the vendor's presence, wrote
  on said diagram defendant's name and the amount of the bid.   *Held,* in
  an action by the vendor to enforce the sale, that the terms, diagram, and
  entries thereon were sufficient, within 2 Rev. St. (9th Ed.) p. 1885, §§ 8, 9,
  providing that every contract for the sale of land shall be void unless the
  contract, or some note or memorandum thereof, expressing the consid-
  eration, be in writing, and signed by the vendor or his agent.

Appeal from Kings county court.

Action by Charles Hagedorn against Max Lang.   From a judg-
ment dismissing the complaint, plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

P. E. Callahan, for appellant.
Josiah T. Marean, for respondent.

GOODRICH, P. J.   The only question involved in this appeal is
whether there was a contract for the sale of real estate, or a note
or memorandum thereof in writing.   Mr. Brumley, as auctioneer,
had advertised for sale at auction on April 20, 1898, at the Real-
Estate Exchange in the borough of Brooklyn, four parcels of prop-
erty, among them the premises in question, No. 625 Prospect Place,
Brooklyn.   A poster had been circulated, which contained separate
diagrams of the four parcels.   The auctioneer testified that just be-
fore the sale he and the plaintiff, who was the vendor of the prop-
erty, signed the terms of sale, with the poster attached thereto; that
these terms were laid upon the stand in front of him, and were read
to the assembled buyers; "that at the time of knocking down the
property he wrote on the parcel in question as laid out on the diagram
attached to the terms of sale, then and there before him on the stand,
the pencil memoranda '2,425' and 'Mr. Lang'; that $2,425 was the
bid made by Mr. Lang."   There appears a similar pencil entry upon
the diagram of another one of the four parcels, "6,575, E. T. Martin."
No entries were made as to the other two parcels.   The original
terms of sale were made an exhibit, and were presented on the argu-
ment of the appeal.   The first page contains the terms of sale, and
is subscribed: "Chas. Hagedorn, Vendor.   Jas. A. Brumley, Auc-
tioneer."   There is in this exhibit a second and separate page of the
terms of sale, not appearing in the record, on which are four printed
blanks called "Memoranda of Purchase," evidently intended to be
signed by the purchasers at the sale.   No one of them is signed by
the plaintiff, the defendant, or the auctioneer.

The sole question which arises on this appeal is whether the poster
containing the pencil entry, taken in connection with the terms of sale

prepared and signed by the vendor and auctioneer just before the sale, is a sufficient compliance with the statute, which reads as follows:

"Sec. 8. Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."  2 Rev. St. (9th Ed.) p. 1885.

"Sec. 9. Every instrument required to be subscribed by any party, under the last preceding section, may be subscribed by the agent of such party lawfully authorized."  Id.

The purpose of the statute of frauds is sufficiently indicated by its title.   It is a statute against frauds.   It was designed to prevent litigation over oral agreements, where the terms are always dependent upon the uncertain and varying memory of witnesses.   This evil was to be remedied by the reduction of the terms of the contract to writing, so that the parties might not misunderstand the particulars of the contract which they were making; that no one might be induced to enter a court of justice to vex the peace of his opponent without clear and definite evidence of the terms of the contract which formed the ground of action, equally accessible to both parties and to the court; and that perjury might not be invited to sustain a claim which never had any real existence.

In Penniman v. Hartshorn, 13 Mass. 87, 90, a similar action, the court, Parker, C. J., writing, stated the object of the statute to be:

"That the bargain shall be proved by writing, and not by parol, in order that purchasers shall not be caught up on loose conversation, or that the proof of the contract should not rest upon the recollection or integrity of witnesses."

In Smith v. Surman, 9 Barn. & C. 561, 569, 571, Littledale, J., said:

"The intention of the legislature in making the statute in question appears by the preamble to have been to prevent fraudulent practices, commonly endeavored to be upheld by perjury and subornation of perjury; and for that purpose, in order to prevent them, it requires that the terms of contracts shall be reduced into writing, or that some other requisite should be complied with, to show manifestly that the contract was completed."  ·

In the same case Bayley, J., said:

"The object of the statute was that the note in writing should exclude all doubt as to the terms of the contract."

Mr. Greenleaf, in his work on Evidence (1 Greenl. Ev. [15th Ed.] p. 358), says:

"The rules of evidence contained in this celebrated statute are calculated for the exclusion of perjury, by requiring, in the cases therein mentioned, some more satisfactory and convincing testimony than mere oral evidence afforded."

With this object of the statute thus plainly and authoritatively announced, it is evident that this case is one where all the terms of the contract appear in the memorandum of the vendor and auctioneer, so that the mischiefs which the statute of frauds was designed to prevent can have no application.

The learned counsel for the respondent contends that the case is not taken out of the statute because the signature was made before the sale, and that the intention of such signature was simply to express the terms upon which the sale was to be made, and not an

intention to express the assent of the vendor to the sale when it should
be made; that there should have been another signature after the
sale, to show that the vendor assented to the defendant's bid, and then
and there agreed to sell him the property according to the pre-
scribed terms.    We think, however, that the entry of the purchaser's
name and the amount of his bid by the auctioneer upon the diagram
annexed to the terms of sale, which had been signed by the vendor just
before the sale, and which were present at the sale, made this memo-
randum and the terms of sale taken together a complete note or
memorandum signed by the vendor, which is sufficient to meet the
requirements of the statute.    It will be observed that the statute
says that the memorandum must be subscribed by the party by whom
the lease or sale is to be made, thus indicating clearly that the memo-
randum is not the final instrument, but only a paper containing the
terms of the transferring instrument thereafter to be made.

In Coddington v. Goddard, 16 Gray, 436, 444, Bigelow, C. J., writing
the opinion, said:

"Nor is it at all material that the names should be written at the bottom of
the memorandum.    It is sufficient if the names of the principals are inserted
in such form and manner as to indicate that it is their contract, by which one
agrees to sell and the other to buy the goods or merchandise specified, upon
the terms therein expressed.    It is the substance, and not the form, of the
memorandum, which the law regards.    The great purpose of the statute is
answered, if the names of the parties and the terms of the contract of sale
are authenticated by written evidence, and do not rest on parol proof."

In Parkhurst v. Van Cortlandt, 1 Johns. Ch. 273, 281, Chancellor
Kent said:

"I am warranted in considering it as a settled principle, that, if the court
cannot ascertain, with reasonable certainty, the terms of the agreement,
from the writing, or for (sic) some other paper to which it refers, the writing
does not take the case out of the statute."

In Mentz v. Newwitter, 122 N. Y. 491, 25 N. E. 1044, a case of real
estate at auction, the court held the essentials to be the subject-
matter of the sale, the terms and the names or a description of the
parties, but decided that there was no valid contract, as the memoran-
dum, though signed by the auctioneer, did not contain the name of
the vendor.    This action was brought against the purchaser.    The
court said (122 N. Y. 498, 25 N. E. 1046):

"The memorandum in suit failed to state the name of the vendor, or to
give any description by which he or she could be identified, and this omission
was fatal.    In the potent language of the statute the contract was void."

The case of Price v. Durin, 56 Barb. 647, has never been ques-
tioned, so far as I can ascertain.    It was a case where there was
a sale of personal property at auction continuing two days.    Before
the sale commenced a memorandum was made in the auctioneer's
book, as follows:

"April 5th, 1866.  Memorandum of auction sale on account of Milton S.
Price, of boots and shoes, commencing April 5th, 1866.  Terms 90 days, bank
note, approved paper, names of purchasers, and lots struck off to each, as
noted as hereafter following.  Jesse Butler, Auctioneer, per W. Stitt, Clerk."

The sale continued through the day, and Stitt, the auctioneer's clerk,
at the time of each sale in the presence of and under the direction

of the auctioneer, entered in the book under the above memorandum the name of each purchaser, the number and kind of property sold, and the price. At the end of each day the memorandum was signed by the auctioneer's clerk. The contention was made that a memorandum should have been made as often as a parcel of goods was sold and that the entry which was made at the sale of each parcel, together with the head memorandum, was not sufficient. At this time the Revised Statutes (3 Rev. St. [5th Ed.] 222, § 4) provided that whenever goods were sold at auction, in order to relieve the sale from the operation of the statute of frauds, "the auctioneer shall at the time of the sale enter in a sale book a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser and the name of the person on whose account the sale is made; such memorandum shall be deemed a note of the contract of sale within the meaning" of the statute relative to contracts. 1 Greenl. Ev. (15th Ed.) pp. 363, 364. We think that the entries on the diagram form a component part of the terms of sale, and that, the vendor having signed the terms of sale, being present at the sale, and knowing of the sale to Mr. Lang, his signature to the terms of sale, with the subsequent writing of the purchaser's name and amount of bid on the diagram attached thereto, is a sufficient compliance with the statute. The judgment should be reversed, and a new trial granted. .

Judgment reversed, and new trial granted; costs to abide the event. All concur.