Williams, J.
The amended petition declares on two distinct contracts between the same parties, both of which, it is claimed, created precisely the same obligation. The first contract, it is alleged, arose from the acceptance by the plaintiff of the terms of the letter written to her by her son, and known in the record as exhibit “A.” This is construed by the pleader as constituting a written contract on the part of the defendant’s intestate to give the plaintiff by last will, or some other mode of transfer, all of the estate, real and personal, of which the intestate should die seized, except only so much as should be necessary for the payment of her debts and funeral expenses. The other contract, which,- it is alleged, was entirely yerbal, and was made a few days after the first one, was exactly to the same effect. The consideration for each of the alleged agreements on the part of the intestate was precisely the same, which was, that the plaintiff should attend upon, nurse and care for her as long as she lived. The alleged'breach of each contract' is identical, which is that the intestate did not give her estate, by last will, or otherwise, to the plaintiff; and the relief demanded for such breach is the same under both eontrácts, namely, that the plaintiff recover all of the estate of which the intestate died seized, except sufficient to pay her debts and funeral expenses. It is entirely clear there could not be a recovery on both contracts; for a recovery on either, would exhaust the subject of the action, necessarily supersede the other contract, and preclude a recovery *98 upon it. This situation is not alluded to for the purpose of putting the plaintiff to an election; but it is of importance in the consideration of a feature of the case that will be noticed hereafter. If the plaintiff’s action can be maintained on either contract, her election to rely on that one may be presumed.
It is admitted that, at the time of the making of' tfyese alleged agreements, and at the time of the intestate’s decease, her estate consisted principally of real property situated in this state, and that the only assets in the hands of the defendant as her administrator, is the balance of the proceeds of that property, it having been sold by him in the due course of administration, remaining after payment of the debts, and cost of administering the estate. This balance is, itself, under our statute real, and not personal property, and goes by descent to the heirs. Section 6171, Revised Statutes. So that, both of these contracts, allowing them the effect claimed by the plaintiff, are agreements for an interest in and concerning lands, on which an action is forbidden by that provision of our statute of frauds contained in Section 4199 of the Revised Statutes, unless the agreement, or a memorandum thereof, is in writing signed by the party to be charged, or by some person by him lawfully authorized. This is authoritatively settled by the case of Shahan v. Swan, 48 Ohio St., 25.
It is the contention of the plaintiff that the letter received from her son, which has already been referred to, constitutes a memorandum in writing of the first alleged contract that is in compliance with the requirements of the statute; and that, performance of her part of the subsequent verbal agreement is sufficient to take that contract out of the operation of the statute. It is that view, which appears to have been sustained by the courts below, of which the plaintiff *99 in error chiefly complains, and it becomes the important subject of inquiry in the case.
As is the case in most instances of legislative innovation upon long established rules and practice, some courts were reluctant to accord to the statute of frauds its intended scope and effect; and it is not surprising that cases are found in which its provisions have been held satisfied by writings that were quite vague and incomplete. The salutary character of the statute, however, is now generally recognized, and full effect given to its terms. The memorandum which the statute requires “to be in writing,” is, to use its language, a memorandum of the “agreement,” between the parties; and it is now well settled, as held by Chancellor Kent, in Parkhurst v. Van Cortlandt, 1 Johns. Ch., 273, that thb memorandum in writing, “to be valid within the statute of frauds, must not only be signed by the party to be charged, but must contain the essential terms of the contract, expressed with such clearness and certainty, that they may be understood from the writing itself, or some other paper to which it refers, without the necessity of resorting to parol proof.” The rule is not less explicitly stated in Reed on the Statute of Frauds, Section 392, as follows: “First, the memorandum must show an agreement, that is to say, a concluded contract; secondly, it must be intended as evidence of such contract; and, thirdly, it must show the whole contract. A contract, then, must be shown by the writing, in which the minds of the parties have met. The memorandum must be so reasonably certain and definite in itself that the contract can be made out without requiring additional proof in parol. ‘It must contain such words as will enable the court, without danger of mistake, to declare the meaning of the parties; it must obviate the necessity of going to oral testimony *100 and, relying on treacherous memory, as to what’ the contract itself was.’ ” No special formality in the execution of the writing is necessary, provided, as held in Anderson v. Harold, 10 Ohio, 399, it is signed for the purpose of giving it authenticity as an agreement; and the consideration need not be expressed. Nor, is it doubted that a valid agreement may be made upon sufficient consideration, to make provision by will out of one’s estate for the benefit of another, or to so dispose of his whole estate; but no promise to do so, which includes real property, is binding unless it is in writing containing the terms of the agreement expressed with reasonable certainty, and a sufficiently definite identification of the subject matter, as required by the rule above stated.
The instrument relied on in this case, tested by that rule, is inadequate. Assuming that the letter written to the plaintiff by her son is signed as required, it does not contain a promise of the defendant’s intestate to make a will in favor of the plaintiff, nor to transfer to her, by any mode of conveyance, the decedent’s estate, or any part of it that is capable of identification. The particular clause of the letter from which it is claimed such promise arose, is the statement that: “If you come and stay with her, after her death all that is left after her debts and funeral expenses are paid shall be yours.” This statement falls short of the promise that is sought to be derived from it, even if it may be considered as a direct communication from the intestate. As was said by the court in White v. Bigelow, 154 Mass., 593, where a similar statement in a letter was relied upon to establish a like promise, it “is the expression of an intention to give the property in the future, rather than an agreement binding upon her and her estate.” Maunsell v. White, 4 H. L. *101 Cas., 1039; Caton v. Caton, L. R., 2 H. L., 127, and Maddison v. Alderson, 8 App. Cas., 467, are analogous cases. Then, it may be inquired, what was meant by the expression in the letter “all that is left,” etc.; “all” of what? The claim of the plaintiff is that all the property both' real and personal of the decedent, was intended. That is supplying by conjecture what the writing does not contain. It_ is apparent, however, that the letter referred to, not only fails to contain the promise and agreement-claimed from it by the plaintiff, but the statement above quoted, from which the agreement is supposed to have arisen, does not purport to be made to the plaintiff as a promise or agreement of the intestate, but rather as expressive of the writer’s own expectation. Most of the contents of the letter, including the statement referred to, appear to be communications to the plaintiff from her son in his individual and filial relation, and not in behalf of, or as the agent of the decedent. The only statement contained in the letter, of the latter character, is as follows: “She says she will make it all right with you if you come.” It is obvious that both parties so understood and acted upon the letter; for. soon after the arrival of the plaintiff in Akron, they, proceeded to, and did, negotiate a verbal agreement of precisely the same effect that it is now claimed had recently before been made in writing by the plaintiff’s acceptance of the terms of this letter. This they would not have done if they had understood that such a written agreement had already been entered into, and was then subsisting between them. Accepting the plaintiff’s statements as entirely true, that is the construction which both parties placed upon the letter when both were living and acting together; when both could speak, and both did speak; and it is the construction to which the plaintiff *102 adhered after the death of the other party, until after trial and judgment in this case. In her original petition the plaintiff avers the fact to be, that upon the receipt of the letter in question, which was written on the 7th day of June, 1896, she went to Akron, where the said Susannah Maconaky then resided, for the purpose of nursing and caring for her, and “thereupon, and thereafter, to-wit: on the 11th day of June, 1896, said Susannah Maconaky and this plaintiff entered into a verbal contract whereby the plaintiff agreed to abide with, nurse, attend, and care for the said Susannah in sickness or in health, for as long a time as she, the said Susannah, might live, in consideration of which promise of the plaintiff, the said Susannah Maconaky on her part agreed to give to this plaintiff all of her estate and property, except so much thereof as might be necessary to pay the debts and funeral expenses of the said Susannah.” This verbal agreement, with the averments of the time and manner it was entered into between the parties, is reasserted and set forth as the foundiation of the plaintiff’s first cause of action in' her amended petition filed after judgment; that cause of action being an exact copy of the original petition. The second cause of action in that amended petition is not founded on a new or changed state of facts, but rests entirely upon a different construction which the pleader seeks to establish for the letter. As still further showing the understanding of the plaintiff that the letter did not constitute a contract as now claimed, it is admitted that a few months after the decease of the intestate, the plaintiff presented to the administrator for allowance and payment, a verified claim for the value of her services in taking care of the decedent until her death, and for taking care of her house after her death; *103 which claim Was allowed by the administrator, and has never been withdrawn. It is not a question of estoppel interfering with the right of amendment. But the practical interpretation which the parties have put upon their transactions is always a proper subject of inquiry in the ascertainment of their rights and obligations under them. If it be conceded that the letter is of doubtful interpretation, the mutual recognition by both parties while both were yet living, and the continued recognition by the plaintiff since the death of the other party, that it did not create the contract, as now claimed, and that none existed between the parties until the verbal agreement was entered into as alleged in the petition, could not be disregarded, and would seem conclusive that it was neither intended nor understood to contain the terms of a contract of the purport eventually claimed from it. The law has provided with certainty for the succession to intestate property, and the rights of those so lawfully entitled to succeed to it, should not be defeated, except by some other lawful disposition by the owner that can be distinctly established.
That the judgments below cannot be supported by the verbal agreement, has been settled by the former decisions of this court. The agreement is within the statute which expressly denies the right to bring an action upon it. The performance relied on to take the agreement out of the statute is the payment of the consideration by the plaintiff, which, although it consisted of personal services rendered by her, is insufficient. Shahan v. Swan, supra; Crabill v. Marsh, 38 Ohio St., 331; Howard v. Brower, 37 Ohio St., 402, 403. It does not aid the plaintiff’s case, as her counsel seem to suppose, to treat it as one at law for damages. The doctrine of part performance is enforced only in *104 equity, and cannot avail to render a contract which is void by the statute because unwritten or unsigned, capable of being directly sued on in a court of law. The extent of her remedy at law would be to recover the value of her services. Her action is not of that nature.

Judgments below reversed and judgment for plaintiff in error. '

Minshall, C. J., Bukket, Spear and Shauck, J J., concur; Davis, J., dissents.