## Foot *vs.* Webb and others.

By an agreement for the sale and purchase of real estate, the vendor covenanted to sell and convey the same as soon as the purchaser "secures the payment of the" purchase price. *Held* that the word "*secures*" was used in its popular signification, and that signification was not equivalent to payment in money, but implied something given and received, by means of which payment might at some future time be procured or compelled. That it implied a term of credit; but how long that credit was to be, or what security should be given, was left unprovided for.

By the same agreement, the vendor agreed to sell and convey the premises "*in consideration of the sum of* $700," and the agreement was signed and sealed by both parties. *Held* that this was a sufficient statement of the consideration to satisfy the statute of frauds.

The owner of a lot of land, by a written agreement, covenanted "to sell and convey all that piece or parcel of land situated on the corner of the public green, now occupied as a store," to the plaintiff, "in consideration of the sum of seven hundred dollars. To be conveyed as soon as the party of the second part [the plaintiff] secures the payment of the same." *Held* that the

Foot v. Webb.

agreement was void for uncertainty, because it did not fix the term of credit, nor the kind or nature of the security to be given for the purchase money, and there was nothing to show that any part of such agreement rested in parol.

*Held, also,* that in an action for a specific performance of the contract, the question to be decided was not whether a reasonable credit had already been given, and whether the purchase money was not now due and payable, but whether the contract was valid when made.

Although it is matter of discretion whether specific performance will in any case be granted, yet the discretion must be exercised according to certain well established rules, and does not rest in the mere caprice of the judge.

The case of *Wright* v. *Weeks,* (25 *N. Y.* 153,) distinguished from the present.

ACTION to enforce the specific performance of a contract for the sale of real estate.

On the first day of April, 1854, at Vernon Centre, Oneida county, N. Y., John Pilcher and the plaintiff, entered into a written contract under seal, for the sale and purchase of certain real estate, which was as follows:

"Vernon Centre, Oneida county, N. Y., April 1, 1854; witnesseth. I, John Pilcher, of the first part, doth agree to sell and convey all that piece or parcel of land situated on the corner of the public green, now occupied as a store, to E. M. Foot, of the second part, in consideration of the sum of seven hundred dollars. To be conveyed as soon as the party of the second part secures the payment of the same, as witness our hands and seals as above dated.

JOHN PILCHER, [L. S.]

Signed in the presence of    E. M. FOOT,    [L. S.]
     JOSIAH S. FOOT."

Under this contract, the plaintiff at once took possession of the premises in question, claiming ownership under the contract; and continued to occupy them down to the commencement of this action; and from the making of the contract to the death of the said John Pilcher, he paid him the annual interest on the purchase money. Pilcher died, intestate, August 29, 1862, and the defendants are

his heirs at law; all of whom are non-residents, and some of whom are infants; and this action was brought to enforce against them the specific performance of the above contract. The answer set up a general denial of the complaint, and also some special matters of defense not necessary to be stated.

The action was referred to a referee. At the trial before him, and before any evidence had been taken, the defendant moved to dismiss the complaint, on the ground that the contract in question was void under the statute of frauds, for two reasons: 1st. For indefiniteness and uncertainty in the description and location of the premises; and, 2d. That it did not sufficiently express the consideration, within the meaning of the statute.

The precise objection made under the second head was, that the word *secure* was indefinite in its meaning, and required a reference to something resting in parol, and thereby the whole contract was rendered void. The plaintiff insisted, 1st. That the contract was valid under the statute, as a written contract. 2d. That possession having accompanied the contract, the whole transaction was valid as a parol contract; and the facts sufficiently appearing, the action should be sustained, under the complaint as it stood. 3d. That if any amendment was necessary, it was merely formal, as the substance of the action remained the same; and the referee, either before or after the evidence was taken, could and should allow such an amendment as would conform the pleadings to the proofs. 4th. That if the referee had not power to do that, then an adjournment should be granted, so that the plaintiff might make an application to the court, at special term, for relief.

The referee held that the description of the premises was sufficient, but decided all the other points in favor of the defendants, and dismissed the complaint. In other words, that the word *secure* had a meaning so indefinite in itself, that its use vitiated a contract otherwise valid.

Foot *v.* Webb.

The counsel for the plaintiff then asked for leave to amend the complaint, and to set up a parol contract, in place of the written contract, which parol contract would be a good cause for action, taken in connection with the fact that the plaintiff had been in possession of the premises in question, under the contract, ever since the same was made. To the making of such amendment the defendants' counsel objected. The referee held that he had no power to grant such an amendment, and declined to do so. The counsel for the plaintiff then applied for an adjournment, in order that he might make an application to the court for leave to make the amendment proposed. To the granting of this, the defendants objected, and the referee refused to grant the motion.

From the judgment entered upon the report of the referee, the plaintiff appealed.

*O. S. Williams,* for the appellant.

I. The decision of the referee, holding the description of the premises sufficient, was correct. The description, although brief, is sufficient to enable a person to locate the premises; at any rate there is nothing which shows such a location to be difficult, much less impossible. The premises are a store, on the corner of the public green, in Vernon Centre, Oneida county. 1. A general description of the premises to be conveyed is sufficient. (*Dart on Vendors,* 100. *Jackson* v. *DeLancey,* 4 *Cowen,* 427. *Rollin* v. *Pickett,* 2 *Hill,* 552.) 2. There is no *patent* ambiguity in this description; and a *latent* abiguity, if any such should be found to exist, may always be explained by extrinsic evidence; and this rule applies to all written instruments. (*Chitty on Cont.* 8th *Am.* ed. 101. 2 *Kent's Com.* 555, 556, *and note. Fish* v. *Hubbard,* 21 *Wend.* 651. 1 *Burrill's Law Dic.* 65.) It may be doubted whether this question can be discussed here, inasmuch as the referee has

decided it for the plaintiff, and no one has appealed from his decision.

II. The written contract sufficiently expresses the consideration, under the statute of frauds. 1. Three things should be borne in mind, in giving a construction and interpretation to this instrument. (*a.*) That the parties evidently drew the paper themselves, and were unlearned in the use of legal terms; and although they may not have used the most appropriate, yet if their intention can be fairly gathered, from a reasonable, or even from a not unnatural construction of the terms used, it should be carried into effect. (*b.*) That the court, in all cases, and not the least in a case like this, should seek to carry out the intentions of parties, and sustain their contracts, rather than to overthrow them. (*Rollins* v. *Pickett,* 2 *Hill,* 552. *Hathaway* v. *Power,* 6 *id.* 453.) (*c.*) The main intention of the parties was a sale and purchase of the store, for $700, payable in cash. If either of them had any idea of a more extended day of payment, they did not deem it of sufficient importance to be expressed in the contract. 2. The first sentence contains all that is material to form a perfect contract, or to meet the requirements of the statute—the parties, the premises sold, and the amount to be paid, or the consideration; a sale and purchase for $700. Suppose the paper had closed at this point, with the signatures of the parties; its legal construction and meaning would have been, an agreement to sell, and payment to be made in cash; nothing being stated respecting the times or terms of payment, the law declares that it must be cash. (*Lake Ontario R. R. Co.* v. *Mason,* 16 *N. Y.* 464, *and many previous cases.*) 3. The contract of sale and purchase, and payment, is in fact complete and closed, at this point. What follows relates merely to the time when the deed is to be delivered, which is a matter of secondary importance; and under no circumstances is it an essential part of the contract, in order to comply with the require-

ments of the statute of frauds.   The contract would have been perfect if it had contained nothing on the subject. 4. Assuming that this last clause is important, or has been made so by being inserted, it does not invalidate the instrument as a written contract.   It does not contain a word which refers to anything *dehors* the paper itself, or which indicates that the parties had any *verbal* arrangement respecting payment, which must be taken into the account in giving a reasonable and legal construction to the paper.   5. The broad and primary meaning of the verb *to secure* is *to make secure,* or *to make sure.*   (2 *Bur. L. Dic.* 919;) and to make a payment secure, or sure, is fully answered by payment in cash.   The point is, that the vendor shall have his pay; and on that, he is made secure or sure by receiving his money.   The term, also, has many secondary meanings; as *to provide for; to obtain; to make.*   It has acquired by usage, in some cases, a third, but more narrow and technical meaning—to give a bond and mortgage.   But in the present case there is no evidence of any usage, or that the parties referred to any; and even if that were presumed to be their meaning, a bond and mortgage *due* would answer the conditions. 6. It is quite likely that the parties themselves never, in definite words, agreed upon the meaning of the terms used; they employed an expression in common use, which answered their purpose, and they left it to the law, if necessary, to fix its meaning, as they did also the meaning of the words *agree, sell* and *convey.*   The court may give to the term any one of the meanings above mentioned, and it will sustain the contract; but it is not equity or good sense to say that it has no meaning, and must be helped out by something external, and thereby the contract be rendered void.   7. The contract is complete and valid without the last sentence; and the addition of this does not render it any less perfect.   It is not possible that a word which has been in common and legal use for so

long a time, has not yet aquired a meaning of its own and standing by itself. Neither is it possible that that meaning is so uncertain and indefinite that the word is not only of no service of itself, but that its use will vitiate a contract which, but for its presence, would be good and valid in law. The principal authority which will probably be cited to sustain the decision of the referee is the case of *Wright* v. *Weeks*, (25 *N. Y.* 153,) but there is an important and controlling difference in the facts in the two cases; and the rule of law laid down in the case cited can be fully sustained without declaring void the contract now before the court.

III. But if this contract is void as a written contract, under the statute of frauds, its place is at once supplied by a *parol contract accompanied by possession*—the same in substance with the written one—a contract which is valid and can be enforced at law. Possession gives the same vitality to the parol contract which a writing, perfect in itself, would have given to the written one. (*Parkhurst* v. *Van Cortland*, 14 *John.* 15. *Harris* v. *Knickerbacker*, 5 *Wend.* 638. *Haight* v. *Child*, 34 *Barb.* 187. *Willard's Eq.* 285.) Suppose the complaint had been drawn upon such a *parol* contract, and in which the word *secure* was used precisely as in the writing; can there be any doubt but that it would have been held good? Would the word *secure* render the whole contract void? And here it may be said, by way of illustrating the positions before taken respecting the written contract, that if the parol contract is not made void by the use of this word, neither is the written one; for no greater definiteness of meaning is demanded in one than in the other. And if it should be held that the word *secure* indicates further conditions, and calls for something to be added to give it a sufficient meaning, then that *something* may be added to the complaint, and established by the evidence. And that evidence may be entirely by parol, or it may be contained in part in the

Foot *v.* Webb.

writing, and the remainder in such parol evidence as the use of the word *secure* shall be held to indicate and require. (14 *John.* 15, 31.)

IV. The parol contract being identical with the written one, except the additional fact of possession, might have been proved under the complaint as it stood, for it contained all the facts essential to such a case.

V. Even if an amendment was necessary, it was merely a formal one, and would not introduce any new cause of action. Such an amendment the referee had full power to grant, and should have granted, either before the testimony was taken, or after it was closed, in order to conform the pleadings to the proofs. (*Voorhies' Code*, § 272. *Id.* §§ 169–173.) The amendment proposed did not contemplate a new or a different cause of action; it was the same cause of action, in substance, and the plaintiff merely proposed to change, not even its form, but only the proof by which it was to be established. The application, therefore, was not liable to the objection raised in *Union Bank* v. *Mott*, (10 *Abb.* 372,) and *Woodruff* v. *Hurson*, (32 *Barb.* 558.) It is true that this matter of amendments rests, for the most part, in the discretion of the court or referee, and therefore is not the subject of appeal. But the present case is one of the exceptions to that rule; for the referee refused to allow the amendment on the distinct ground that he had *no power to grant it;* and a decision based upon that ground is the subject of appeal. (*Beach* v. *Chamberlain*, 3 *Wend.* 366. *McElwain* v. *Corning*, 12 *Abb.* 20. *Russell* v. *Conn*, 20 *N. Y.* 81.) And the court at general term will order an amendment which is deemed proper, and without any formal notice of motion. (*Clark* v. *Dales*, 20 *Barb.* 42–67.)

VI. If the referee had not the power to grant this amendment, as he declared at the hearing, then he should have granted the application for an adjournment, so that the plaintiff might make the proper motion to the court

Foot *v.* Webb.

for relief. This is a proper course to adopt, in such a case; it is a course often adopted, and the refusal of the referee to grant this application was an error which should be corrected by this court. (*Forbes* v. *Frary*, 2 *John. Cas.* 224. *Graham's Pr.* 573.) Unless this remedy exists, the plaintiff having a good cause of action, beyond a question, though informally stated, would be turned out of court, with the penalty of a bill of costs added to his other bad fortune.

*S. B. Griswold*, for the respondents.

I. The contract set forth in the complaint is invalid upon its face, and cannot be made the subject of specific performance. 1. It is void for vagueness, uncertainty and indefiniteness in the description and location of the premises. (*Mead* v. *Lawson*, 1 *How. Ap. Cas.* 394. *Abeel* v. *Radcliff*, 13 *John.* 296. *Rollin* v. *Pickett*, 2 *Hill*, 552. *Jackson* v. *Parkhurst*, 4 *Wend.* 369. *Hammer* v. *McEldowney*, 46 *Penn.* 334. *Capps* v. *Holt*, 5 *Jones' Eq.* 77. *Mallory* v. *Mallory*, *Busbee's Eq.* 80, 254, 65. *Allen* v. *Chambers*, 4 *Iredell's Eq.* 125. 1 *Story's Eq. Jur.* § 767. 2 *R. S.* 135, § 8.) 2. The description in this contract would not be sufficient, either in a will, (*Miller* v. *Travers*, 8 *Bing.* 244; 2 *Phil. Ev.* 4th *Am. ed.* 763,) and the rule is less strict in regard to wills, (*Hall* v. *Leonard*, 1 *Pick.* 31,) or in a deed, (*Jackson* v. *Parkhurst, supra ; Worthington* v. *Hylyer*, 4 *Mass.* 205; *Huntt* v. *Gist*, 2 *Har. & John.* 498,) or in an award. (*Schuyler* v. *Van Der Veer*, 2 *Caines*, 235. *Brown* v. *Hankerson*, 3 *Cowen*, 70. *Watson on Arb. and Award*, 166.) 3. This contract does not give the residence of the parties, nor does it show in what town, county or state the premises are located; no boundaries are given; it does not refer to the premises as belonging to or owned by the vendor, (nor does the complaint aver ownership in the vendor;) it does not state in whose occupation the premises were at the date of the contract;

Foot *v.* Webb.

nor does it refer to anything *extrinsic*, by which the particular premises can be ascertained or located. 4. The words " Vernon Center, Oneida county, N. Y." which immediately precede the date of the contract, can only be used to show the location of the parties at the time the contract was made. They have no reference to the subject matter of the contract, either by their terms, or by any known rule of legal construction. (*Fisher* v. *Evans*, 5 *Binney*, 541. *Taylor* v. *Snyder*, 3 *Denio*, 145.) 5. In the following cases, the contracts were far more specific and certain, in description and location, than the one in suit. In each case the locality of the premises was certain by the terms of the contract itself, or by a reference to something *extrinsic*, by which the particular premises might be ascertained and identified. (*Richards* v. *Edick*, 17 *Barb.* 260. *Talman* v. *Franklin*, 4 *Kern.* 584. *Seaman* y. *Hogeboom*, 21 *Barb.* 398. *Fish* v. *Hubbard*, 21 *Wend.* 651. *Atwood* v. *Cobb*, 16 *Pick.* 227.) 6. It is evident that from the terms of the contract itself, the locality of the premises cannot be ascertained; nor does the contract refer to anything extrinsic by which the particular premises can be ascertained and identified. And it is further claimed that this case does not fall within the class of cases where *extrinsic* evidence is admitted, to identify and point out the precise premises agreed to be conveyed, or to fit the description to the thing conveyed. The ambiguity here is one that the law will not allow to be removed by parol evidence. (*Miller* v. *Travers*, 8 *Bing.* 441. 2 *Phil. Ev.* 719, 726, 763. 2 *Pars. on Cont.* 563, and cases supra. *Wigram on Extrin. Ev.* 105, 117, 2d ed.) 7. The great difficulty is, that the contract does not point out in what part of the earth the premises are located; it refers to nothing *extrinsic* by which the public green can be ascertained and located. If it be interpreted to read : " Situated on the corner of the public green in Vernon Centre, Oneida county, N. Y.," or parol evidence be admitted, to show that the premises the

vendor intended to convey were in fact located there, you thereby introduce *new words*, and a *new description* into the body of the contract itself, within the rule laid down in *Miller* v. *Travers;* and all the authorities go to show that this cannot be done, even in case of a will or deed. 8. It is said that a greater degree of certainty is required in a contract, when specific performance is asked for, than in an action at law for damages for a breach of its conditions. And the court will observe that the class of cases in which contracts have been upheld when the description of the subject matter was imperfectly given, were actions at law, for damages growing out of a breach of some covenant therein. (*Fry on Specific Perf.* § 229.)

II. The referee was correct in holding the contract set forth in the complaint as void, for not sufficiently expressing the consideration, under the statute of frauds. 1. It should have stated how the purchase money was to be secured. The contract evidently contemplates a period of credit to be given to the vendee, and therefore should state the species of security, the period of credit to be given, and the time and manner of ultimate payment. (*See* 3 *R. S.* 220, § 8, *5th ed.; Wright* v. *Weeks,* 25 *N. Y.* 153; *Abeel* v. *Radcliff,* 13 *John.* 296; 1 *Story's Eq. Jur.* § 767.) 2. The statute of frauds declares that a certain class of contracts, of which this is one, shall be void unless it, or some note or memorandum thereof, *expressing the consideration,* be in writing, and be subscribed by the vendor of the land, or his lawfully authorized agent. This statute requires that not only shall the fact that the contract was made, be evidenced by writing, but that the contract itself, *with all its terms and conditions,* shall be in writing. (*Per Allen, J.,* in *Wright* v. *Weeks, supra.*) 3. The last clause of the contract, which reads "to be conveyed as soon as the party of the second part *secures the payment of the same,*" presents an ambiguity that is patent, and cannot be explained by parol evidence, within well settled

Foot *v.* Webb.

rules of law. The word *secures* has great importance, and is significant, in this branch of the contract. It cannot be rejected; full effect must be given to its meaning; or, as Judge ALLEN remarks, at the close of his opinion in *Wright* v. *Weeks*, "The words cannot be rejected. They are a part of the memorandum made by the parties, and effect must be given to them; and giving effect to them leaves the contract ambiguous, and therefore void." 4. The definition of the word "*secure*," according to *Webster*, is, "To make certain." "To put beyond hazard." "To make certain of payment;" "as to *secure* a debt by mortgage." And *Blackstone* defines the word *security* to mean "Anything given or deposited to secure the payment of a debt, or the performance of a contract, as a bond with a surety, a mortgage, the indorsement of a responsible person, a pledge, &c." The word *secures*, in the sense in which it is used in the contract, means, and was intended to mean, "*to make certain of payment.*" This last phrase of the contract can have but one rational signification, and that is derived from the natural import of the words themselves. 5. It was contended by the plaintiff, on the trial before the referee, that a cash payment would satisfy the terms of this contract; that by paying over the purchase money in cash, the plaintiff would thereby *secure the payment* of the same, within the meaning of the contract. Such a doctrine is simply absurd. To *pay* a sum of money, and to *secure* the payment of a sum of money, are two separate and distinct acts. 6. A cash payment will not satisfy the terms of this contract; the contract does not call for that. 7. It is easy to see how the matter of credit to be given might have constituted a material portion of the consideration to both parties. To the vendor it may have been an object to keep the purchase money invested; it prevented the vendee from coming forward at any time, without notice, and thrusting the money into the hands of the vendor, at a time, perhaps, when it would

be difficult for him to invest it. As to the purchaser, it enabled him to come forward with a security, and demand a conveyance, at a time when, perhaps, it would have been difficult for him to raise the cash for the payment. 8. Nor could the plaintiff waive the credit, and treat the purchase money as payable at once. (*Davis* v. *Shields,* 26 *Wend.* 341, *explained by Denio, J.,* 25 *N. Y.* 158.) 9. The last clause of the contract shows, beyond a doubt, that a term of credit was to be given to the purchaser; a security for the payment of the purchase money to be given, instead of a cash payment, whenever a conveyance was demanded. 10. But the difficulty is, the parties have not made a perfect memorandum of the contract, as required by the statute of frauds. They have not gone far enough; they have left matters vague and indefinite ; there were terms and conditions which they did not reduce to writing. They should have written out, in the contract, a description of the security, the period of credit, and the time and manner of ultimate payment. 11. The terms of payment, and time or times within which the purchase money is to be paid, in a contract for the sale of land, is a part of the consideration, and must be fully expressed in the contract itself. (*See Wright* v. *Weeks,* 25 *N. Y.* 155, 157, 161.) The familiar rule, so often applied in the case of promissory notes, contracts for the sale of goods, &c., that where no terms of payment are mentioned in the contract, the law implies that it means "payable on demand," or "payable on delivery," is not applicable to contracts for the sale of land, where, by statute, the consideration must be fully expressed in the writing itself. The law will not, by implication, cure a defect in a contract by implying terms and conditions, where, by statute, the contract itself must, in express terms, contain all the material terms and conditions of the agreement. This proposition is fully established by the case of *Wright* v. *Weeks,* (*supra.*) 12. The court, in looking at contracts under the statute of frauds,

will interpret the language in its ordinary use and meaning, and according to the general understanding. The intention of the parties, as declared by the words of the instrument, must govern the construction, even though the effect would be to invalidate the instrument within the statute of frauds. (*Statton* v. *Pettit*, 3 *Eng. Law and Eq.* 479. 2 *Pars. on Cont.* 501, note 504.) The language here is clear, unequivocal and unambiguous; therefore the court will interpret it in its ordinary use and meaning. (*Springsteen* v. *Samson*, 32 *N. Y.* 703, 706.) 13. The action for specific performance is always addressed to the sound discretion of the court, and the court will not struggle to uphold the contract, in a case like this, where a great lapse of time has occurred, and circumstances have happened that would render it grossly inequitable to decree a specific performance, conceding the contract to be valid. 14. The principle of the maxim. "*ut res magis valeat quam pereat*," so often applied in the case of a will or deed, will not be so strenuously adopted in the case of a contract for the sale of land. Upon this principle it is said in *Fish* v. *Hubbard*, (21 *Wend.* 654,) that it is the duty of the court to make a deed or will effective, if possible. This rule applies more particularly to cases of the construction of written instruments, where words have several technical senses. There the court will adopt the sense which will give effect to the contract. But even here, the words must bear the sense which, by construction, is put upon them. (*Gibson* v. *Minet*, 1 *H. Black.* 614.) 15. We ask the court to hold, with the referee in this case, as the Court of Appeals held with regard to the contract, in *Wright* v. *Weeks*, "that the plaintiff cannot maintain this suit, except upon the footing of a contract, by which time was to be given for the payment of the price of the land;" and the contract, not setting forth the period of credit and the terms of payment, is *void*, as not fully expressing the consideration, within the statute of frauds.

The ruling of the referee, upon the validity of this contract was manifestly correct.

III. The exception to the refusal of the referee to grant the amendment asked for, was not well taken. The referee was clearly right in refusing to grant the amendment, on the ground of a want of power in him to allow such an amendment, on the trial. (*Code,* §§ 272, 169–173. *Union Bank* v. *Mott,* 18 *How. Pr.* 506; 19 *id.* 267. *Woodruff* v. *Hurson,* 32 *Barb.* 557. *Everett* v. *Vandryes,* 19 *N. Y.* 439. *Catlin* v. *Hansen,* 1 *Duer,* 327. *Fagen* v. *Davidson,* 2 *id.* 153. *Billings* v. *Baker,* 6 *Abb.* 213.)

IV. The adjournment asked for by the plaintiff was a matter purely discretionary with the referee, and the decision is not appealable. Nor will this court review the same, on an appeal from the judgment.

*By the Court,* MULLIN, J. By the agreement sought to be specifically enforced in this case, the intestate covenanted to sell and convey the premises therein referred to, "*as soon as the party of the second part* (the plaintiff in this suit) secures the payment of the same;" that is, the purchase price. The word "secures" was used in its popular signification, and that signification is not equivalent to payment in money, but implies something given and received, by means of which payment may at some future time be procured or compelled. It implies a term of credit. How long that credit was to be, or what security should be given, is left wholly unprovided for by this writing.

This case is distinguishable from that of *Wright* v. *Weeks,* (25 *N. Y.* 153.) In that case the agreement was to sell, within three months, the premises described, for $6500, *upon the terms as specified.* The Court of Appeals held that the writing was incomplete without the terms referred to, and as those terms rested in parol, the contract was void within the statute of frauds; that by that statute the whole contract must be in writing, and cannot rest partly

Foot *v.* Webb.

in writing and partly in parol. In the case before us there is nothing to show that any part of the agreement rests in parol, and hence if the agreement is defective it is so because the parties have failed to agree upon the terms of credit, or the kind of security to be given.

The defendant's counsel insists that the consideration of the agreement is not stated, and it is for that reason within the statute of frauds and void. In this, I think he is mistaken. A consideration is stated in the most explicit terms. The language is, the party of the first part agrees to sell and convey "*in consideration of the sum of* $700," and the agreement is signed and sealed by the plaintiff. If this is not a sufficient statement of the consideration to satisfy the statute, it would be difficult to find language which would be more expressive. I am entirely satisfied that the contract is not avoided by the statute of frauds. But although the contract may not be invalid by reason of the statute of frauds, the question to be next considered is whether it is void because of uncertainty as to its terms. In *Chitty on Contracts*, 73, it is said: "But in order to constitute a valid parol or written agreement, the parties must express themselves in such terms that it can be ascertained to a moral or reasonable degree of certainty what they mean. And if an agreement be so vague and indefinite that it is not possible to collect the full intention of the parties, it is void; for neither the court nor the jury can make an agreement for the parties." Courts of equity refuse to compel the performance of either a verbal or written agreement unless established by competent proofs to be clear, definite and unequivocal in all its terms. If the terms are uncertain, or ambiguous, or not made out by satisfactory proofs, a specific performance will not be decreed. (2 *Story's Eq. Jur.* §§ 764, 767, 751.)

It is inferable from the language used in reference to the degree of certainty required by courts of equity in

order to induce them to compel specific performance of a
contract, that a greater degree of certainty is required
than is necessary to render valid a contract in the courts
of law. But I do not think that any such distinction was
intended. The rules of construction of contracts are the
same in both courts; and no reason can be assigned for
demanding a greater degree of certainty in the one court
than in the other. It is true, it is matter of discretion
whether specific performance will, in any case, be granted;
yet I apprehend the discretion must be exercised accord-
ing to certain well established rules, and does not rest in
the mere caprice of the judge. The question then is, is
the contract under consideration void for uncertainty be-
cause it does not fix the term of credit, nor the kind or
nature of the security to be given for the purchase money?
It is said in 2 *Parsons on Contracts*, 47, that when anything
is to be done, as goods to be delivered, or the like, and no
term is specified in the contract, it is then a presumption
of law that the parties intended and agreed that the thing
should be done in a reasonable time. But what is a rea-
sonable time is a question of law for the court. This rule
applies to the time within which the security was to be
given. The defendant bound himself to convey " as soon
as the party of the second part secures the payment," &c.

It was held by the Supreme Court of Pennsylvania, in
*Guier* v. *Page*, (4 *Serg. & Rawle*, 1,) that a sale for approved
indorsed paper means, in law, a sale for paper which
ought to be approved, and not for paper such as the seller
may approve. It was held in *Winslow* v. *Copeland*, 3 *Shep-
ley*, 276,) that when payment for land is to be made by
good notes secured by mortgage on the premises, the notes
must be good without the mortgage, and the mortgage is
to be additional security. These cases have gone the
farthest in supplying apparent omissions in contracts, and
in giving effect to the intention of the parties, yet these do
not go far enough to enable the court to fix the term of

Foot *v.* Webb.

credit which the plaintiff should have for the payment of the purchase money, nor the kind of security which he ought to have given. I think the contract is void for uncertainty in these respects.

If the question was, whether a reasonable credit had not already been given, and whether the purchase money was not now due and payable, I should answer both questions in the affirmative. But we are to decide whether the contract was valid when made; as, if it was not then valid, it is not now, unless it has been made valid by the receipt of the interest by the intestate from year to year, up to the time of his death. But I do not see how that remedies the defects in the agreement. It does not fix a term of credit, nor prescribe the kind of security which should be given.

If these views are correct, it follows that no amendment of the complaint could aid the plaintiff. The written agreement being void, a verbal one couched in the same language must be also void by reason of the same defects. It is not alleged that there was a verbal agreement containing provisions as to the time of credit, or the nature of the security to be given, and without this it would be folly to allow the commencement of an action which must be defeated on precisely the same ground as the present one. No question is made as to whether the contract was void for want of mutuality, but I apprehend that no advantage could be taken of that defect if there was a want of mutuality. (*See Worrall* v. *Munn,* 1 *Seld.* 229, *and cases cited on page* 246.)

The judgment must be affirmed, with costs.

Judgment affirmed.

[Onondaga General Term, April 3, 1866. *Bacon, Foster* and *Mullin,* Justices.]