EUGENE BROWN, Respondent, v. HIRAM BROWN and
Others, Appellants, Impleaded, etc.

*Oral agreement for the sale of land — what must be shown to compel its specific per-
formance by the heirs of the party agreeing to sell — Evidence — when a person may
testify as to transactions with a deceased person — Code of Civil Procedure, sec. 829 —
materiality of question.*

The evidence which is required to sustain an action brought by a son against
the heirs-at-law and devisees of his father, to compel the specific performance
of an oral agreement for the sale of land alleged to have been made by the
father, considered and stated by Hardin, J.

In such an action the plaintiff called his mother as a witness to testify as to the
making of the alleged agreement. By the will of the father the mother was
entitled to the use of the land for the term of her natural life. She was a
party defendant to the action, but had put in no answer.

*Held,* that as the testimony given was not in her own interest, she was not pre-
vented from giving it by section 829 of the Code of Civil Procedure.

The plaintiff was examined as a witness in his own behalf. In order to show
the performance by him of the alleged agreement, which was made, as claimed,
in March, 1871, he stated in detail the manner in which he had managed the
farm and purchased supplies for it and the use of his father and mother, from
the time of the making of the agreement down to the time of the father's
death. Upon his cross-examination he was asked by the counsel for the
defendant : "Had you, prior to the 1st of March, 1871, gone right on and done
this work, and furnished moneys and paid hired help, and generally what you
have stated you did since 1871 ?"

*Held,* that the question was proper and material, as an affirmative answer thereto
would weaken the inference that the acts testified to by the plaintiff were done
in pursuance of the alleged contract, and that the court erred in excluding it.

Appeal from a judgment, entered in Monroe county upon the
report of a referee, requiring the defendants, heirs-at-law and widow
of Anson Brown, deceased, to convey and release lands described in
the complaint to the plaintiff.

Anson Brown, the testator, died June 17, 1879, leaving him sur-
viving his widow Almira Brown, his daughter Mary Brown, and
his sons Hiram Brown, the defendant, and Eugene Brown, the
plaintiff. On the 11th day of June, 1879, six days before his
death, he made and published his last will and testament, wherein
he devised the use of his farm to his wife Almira, during her life,
and further provided that "after her death the said farm is to be

divided equally among my three children or their heirs." The will also contained bequests of certain personal property on the farm to his son Eugene, and a portion to his three children equally, and his household goods to his wife. The will contained a direction, viz. : " It is my will that my wife shall pay the mortgage that is now on my farm." He appointed one Myron Sperry as executor. The farm consisted of forty-one acres, worth about $6,000. The testator had been in possession of it a great many years.

Eugene, the plaintiff, became twenty-one years of age on the 30th day of January, 1871. After the will was admitted to probate he commenced a negotiation with his sister Mary and brother Hiram, to purchase from them their interest in the farm. The negotiation resulted in a disagreement as to terms; they respectively asking a thousand dollars apiece, and he offering three hundred. Thereupon he brought this action, and alleges in the complaint that about the 1st of March, 1871, his father made and entered into a contract or agreement with him, by the terms of which he " promised and agreed to give, grant, convey, devise and demise to this plaintiff, said above described premises upon which said Brown then resided, and in consideration that said plaintiff would work, look after and manage said premises, and should support, nurse and take care of him, the said Anson Brown, and his wife, said defendant Almira, during the lifetime of him, the said Anson Brown. The plaintiff avers that he performed the agreement on his part, viz. : That he remained at home, worked, looked after and managed said premises, and paid the expenses of the same, and supported, nursed and took care of him, the said Anson Brown and his said wife, the said defendant Almira Brown, for the period of eight years and upwards and until the death of him, the said Anson Brown. The plaintiff also avers that the testator " neglected and failed to perform 'his part of said agreement, in that he neglected and failed to and did not give, grant, convey, devise and demise to this plaintiff the said premises, according to the terms of said agreement." The plaintiff demanded judgment that said defendants be adjudged and decreed to convey to this plaintiff, by good and sufficient deed or deeds or conveyances, duly executed and acknowledged, and fit and ready to be recorded, all and singular the interest or interests derived, received or inherited

by them or either of them, jointly or severally from the said Anson Brown, deceased.

Almira Brown, the widow, suffered a default. The other defendants answered denying the alleged contract and setting up the devise of the part according to the terms of the will.

The referee found that the agreement was made, as alleged in the complaint, between the plaintiff and the testator by parol, and that the plaintiff " kept and performed the said oral agreement on his part in all respects from said time until the death of said Anson Brown in June, 1879," and as a conclusion of law he found, viz.: " The plaintiff is entitled to a judgment and decree adjudging, decreeing and directing that within ten days after the entry and service thereof said defendants do, on presentation, execute, acknowledge and deliver to said plaintiff a deed releasing and conveying all and singular the interest or interests derived, received or inherited by either of them, jointly or severally, from the said Anson Brown, deceased."

From the judgment entered upon that report the defendants appealed.

*Stull & Bennett,* for the appellants.

*W. H. Shuart* and *John S. Morgan,* for the respondent.

HARDIN, J.:

The learned referee is correct when he states in his opinion, viz.: " It is necessary, in order to take a case out of the statute of frauds on the ground of part performance of the contract, that the existence of the contract should be made out by clear and satisfactory proof, *and that the act of performance is of the identical contract;* " and, also, in saying: " The general language of the books is that part performance will not take a parol agreement out of the statute unless the terms of the agreement distinctly appear or are made out to the satisfaction of the court." (*Parkhurst* v. *Van Cortlandt,* 1 Johns. Ch., 284; *Swartwout* v. *Burr,* 1 Barb., 497; *Purcell* v. *Miner,* 4 Wall., 517.) And he might with great propriety have added, viz.: " Contracts claimed to have been entered into with aged or infirm persons, to be enforced after death to the detriment and the disinheriting of lawful heirs, who otherwise would be enti-

tled to their estates, are properly regarded with grave suspicion by courts of justice, and should be closely scrutinized and only allowed to stand when established by the strongest evidence. *More especially should this rule prevail when the contract is not in writing, rests entirely upon parol testimony, which is not very precise and somewhat uncertain, and is directly in conflict with the will of the deceased,* \* \* \* and which remained unrevoked at the time of his decease. (Opinion of MILLER, J., in *Shakespeare* v. *Markham*, 72 N. Y., 403, affirming the opinion of this court in S. C., 10 Hun, 322.) TALCOTT, J., speaking for this court, says: "Such contracts have a tendency to subvert the statute of wills and to do away with all those safeguards in respect to the posthumous disposition of property with which the law surrounds such instruments." And he adds: "But in the cases in which such contracts are set up, and especially where they are attempted to be established by parol testimony, *the temptation and opportunity for fraud is such that they are looked upon with suspicion,* and the courts require the clearest evidence that a contract founded on a valuable consideration, and *certain and definite* in all its parts, should be shown to have been deliberately made by the decedent." (See *Robinson* v. *Raynor*, 28 N. Y., 494; *Lisk* v. *Sherman*, 25 Barb., 433; *Bunton* v. *Smith*, 40 N. H., 352; *Smith* v. *Crandall*, 20 Md., 482; *Foot* v. *Webb*, 59 Barb., 38; *Ackerman* v. *Ackerman, Exr.*, 24 N. J. Eq., 315; *Twiss* v. *George*, 33 Mich., 253.)

In *Purcell* v. *Miner* (4 Wall., 513, *supra*), GREER, J., says, "a mere breach of a parol promise will not make a case for the interference of a chancellor," and that proof of the contract which will take the case out of the statute "must be clear, definite and conclusive, and must show a contract leaving no *jus deliberandi* or *locus pœnitentiœ.* It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transacion, in chance conversation which the witness had no reason to recollect from interest in the subject matter, which may have been imperfectly heard or inaccurately remembered, perverted, or altogether fabricated; testimony, therefore, impossible to be contradicted. That a consideration has been paid or tendered;" and again, viz.: "Such a part performance of the contract that its rescission would be a fraud on the other party, and could not be

fully compensated for by recovery of damages in a court of law."
This doctrine is substantially the same as prevails in the courts of
this State, and was asserted in *Ryan* v. *Dox* (34 N. Y., 307). (See,
also, *Redfield* v. *Holland P. Ins. Co.*, 56 N. Y., 357; *Morrill* v.
*Cooper*, 65 Barb., 519; *Wheeler* v. *Reynolds*, 66 N. Y., 277.)

The appellant argues that the widow Almira Brown was not com-
petent as a witness in behalf of the plaintiff to establish the alleged
parol agreement made between her son and husband in March, 1871.
We think the argument is unsound. First, although she may be
said to be a person interested in the event within the provisions
of section 829 of the Code of Civil Procedure, it cannot be said,
while testifying in favor of the plaintiff in this action in support of
his complaint, that she was testifying in her own behalf or interest.
On the contrary, she was testifying against her interest. She had
suffered a default in the action. The necessary effect of a judgment
as against her was to pare down her rights from a life estate in the
whole of the property to simply a life interest as doweress in one-
third. By the terms of the will she was given the use of the real
estate for life. If her son succeeds in this action, she, as well as
the other defendants, is required to release and convey whatever
interest she derived by the terms of the will as a life tenant to her
son. We, therefore, think the referee committed no error in over-
ruling the objection to her testimony, in so far as it supported the
averments of the complaint, and in so far as it supports the findings
made by the referee.

The case of *Hunter* v. *Herrick* (26 Hun, 272), cited by the
appellant, is unlike this one. There it was held that the surviving
members of a partnership were not competent to testify to personal
transactions had with the deceased "which tended to show that
deceased was a member of the firm." If their testimony had been
received it would have brought in another person to share the
losses and liabilities of the firm which otherwise they must sustain,
and in that regard their testimony would directly inure to their
own benefit.

On the other hand, if the agreement was that the son should
support and take care of her during her life, in the event that she
should survive her husband, then it is obvious that to allow her to
testify to such an agreement would be to allow her to testify in her

"own behalf or interest." While she states in one part of her testimony that that was a part of the agreement, she finally apparently repudiates it, and limits the agreement to a requirement to support and take care of the father during his life. The testimony, therefore, was properly received, and there is no objection to it, or any portion of it, which presents to us any error of which the appellant can avail. Her testimony was very essential to the plaintiff's case. Without it one of the requirements of the rule to which we have adverted would not be answered by any legitimate evidence found in the case, as she is the only competent witness who speaks from a personal knowledge of the alleged contract between her deceased husband and the plaintiff. The plaintiff himself was not a competent witness to testify in his own behalf or interest to the alleged contract of March, 1871, between himself and his father, as it would involve a personal transaction or communication with the deceased. (Code, § 829.)

The plaintiff was sworn in his own behalf, with a view of establishing that his acts and doings after March, 1871, were under the alleged agreement with his father, and had reference to it, and were in fulfillment of it. In endeavoring to support this branch of his case, he was allowed to testify to the manner in which the business was conducted between March, 1871, and June, 1879, the work which was done on the farm, the repairs, the additions to the buildings, the exchange of works with his neighbors, the purchase of groceries for the use of the family, which consisted of the father and mother and son, until within about three years of the death, when the son married and took his wife to live with his parents also; and after such facts had been detailed by him, from which it was asked that the referee should infer that there had been a change in the mode and manner of carrying on the farm and of transacting the business, and the details thereof had been stated at large, with a view of giving rise to the inference that the son had been fulfilling a contract, rather than continuing the relations theretofore existing between him and his father. After the defendant had, to a considerable extent, cross-examined in respect to the specific acts and doings of the son, the counsel for the defendant propounded the following question, viz.: "Q. Had you, prior to the 1st of March, 1871, gone right on and done this work, and fur

nished moneys and paid hired help, and generally what you have stated you did since 1871?" There was a general objection to this question, and the objection was sustained, and an exception taken by the defendants. It is now urged before us that this question was not material. We do not think so. The very facts which the plaintiff had testified to in respect to the management of the farm, from 1871 on, were the facts relied upon to show that he had partly performed on his part the oral arrangement between himself and his father; that he had so far on his part consummated the contract in reliance upon it that the statute of frauds was silenced by those acts, and that the court should help the agreement out of the statute of frauds by reason of those several acts relied upon by him as indicative of a part performance. It was therefore competent for the defendants to shake and overthrow, if they could, out of the mouth of this witness, the position taken in behalf of his case in one of its essential parts. If the same acts and the same doings took place by and between him and his father before the alleged agreement as he alleges took place after it, the conclusion might not have been reached by the referee that the acts and doings after March, 1871, were in consequence of and in reliance upon the alleged parol agreement, we think the testimony called for by the question was proper and ought to have been received. We cannot say that its rejection worked no harm to the appellants. We can see that the testimony which the plaintiff gave as a witness himself was very vital to the issues. It is true some of his testimony, upon proper objection, we must assume would have been rejected as being in violation of section 829; but after the testimony was received it was entirely competent for the defendants to show by him that he, years before he was twenty-one, years before the alleged agreement of March, 1871, had "gone right on and done this work, and furnished moneys and paid hired help," the same as he stated he did after March, 1871.

There is no force in the objection taken on the motion for a nonsuit that the executor should have been made a party defendant, as there was no such defense in the answer. (*Farwell* v. *Importers and Traders' Bank*, 27 Alb. Law Jour., 173; Code, sec. 148; *Fosgate* v. *Herkimer etc., Co.*, 12 N. Y., 580.) Besides, it is not apparent that this action would interfere with the rights of cred-

itors or of the executor in the settlement of the estate. We think the referee was correct in overruling that as a ground on the motion for a nonsuit.

For the error which we have pointed out we think a new trial should be granted.

Judgment reversed and new trial ordered before another referee, costs of this appeal to abide the final award of costs in the action.

SMITH, P. J., and BARKER, J., concurred.

So ordered.